## CRAWFORD v. UNITED STATES.
### No. 5156.

Court of Appeals of District of Columbia.
Argued May 6, 1930.
Decided June 2, 1930.

ROBB, Associate Justice, dissenting.

John H. Wilson and Nathan A. Dobbins, both of Washington, D. C., for appellant.

Leo A. Rover and Neil Burkinshaw, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellant, defendant below, was convicted of murder in the first degree in the Supreme Court of the District of Columbia; and, from the judgment thereon, sentencing him to death, this appeal was taken.

Four men were named in the indictment: Defendant, who was convicted; one Joseph Hardy, who has not been apprehended; one Benjamin Branson, who obtained a severance, testified for the United States, thereafter pleaded guilty to murder in the second degree; and one Carl M. Terry, who was acquitted. The murder was committed in a gasoline station at Sixth street and Rhode ·Island avenue, in the city of Washington, where the defendant and Hardy had gone with the intention of committing the crime of robbery.

It appears from the evidence that Crawford and Hardy took a car, on the evening the crime was committed, and got the two other defendants and drove across the District line into Maryland with the intention of hi-

jacking whisky runners. After waiting by the roadside for about three-quarters of an hour without meeting any victim, they decided to return to the city. When they reached a point at the intersection of Sixth street and Rhode Island avenue, the suggestion was made that they hold up the gas station at that point. Defendant suggested that he would take a bank bill, and, while the station keeper was making change, he would hold him up and get his money. Defendant and Hardy got out of the car and went into the station, when shortly two shots were heard. When defendant and Hardy came out, defendant admitted that he squeezed the gun and it went off.

A number of witnesses, who accompanied the decedent to a hospital, testified on behalf of the government that he made a dying statement, in which he stated that one of the men said, "Take this, you white s—— b——," and then fired the fatal shot. The deceased further stated, in substance, that he did not know why they shot him, because if they had asked for his money he would have given it to them.

■ It is urged on behalf of defendant that the court erred in instructing the jury to ignore in the cross-examination of the witness Branson an admission that he had pleaded guilty in 1921 to the charge of grand larceny, which it was conceded was later nollied. Counsel for defendant insists that this evidence should have been admitted as affecting the credibility of the witness, on the ground that a plea of guilty is a conviction which, under the statute, might be shown as affecting the credibility of the witness.

We think it is settled law that to constitute a conviction, within the terms of the statute (Code, § 1067), there must not only be a plea of guilty, or the verdict of guilty by a jury, but this must be followed by a judgment and sentence of the court. Singer v. United States (C. C. A.) 278 F. 415; Schooley v. United States (C. C. A.) 4 F. (2d) 767; Attorney General v. Pelletier, 240 Mass. 264, 134 N. E. 407; Martin v. State, 30 Okl. Cr. 49, 234 P. 795; State v. Burnett, 144 Wash. 598, 258 P. 484; State v. Savage, 86 W. Va. 655, 104 S. E. 153; Ford v. State, 106 Neb. 439, 184 N. W. 70.

It is contended that we held in the case of Heim v. United States, 47 App. D. C. 485, L. R. A. 1918E, 87, that a plea of guilty is equivalent to a conviction. In that case it was held that a plea of guilty to an indictment, afterwards withdrawn by permission of court, cannot be proof against a defendant in his trial on a subsequent plea of not guilty.

A plea of guilty is equivalent to a verdict of guilty by a jury. In either case, therefore, it takes the judgment of the court on the plea or verdict to constitute a conviction. A careful reading of the opinion in the Heim Case fully sustains this view.

■ Error is urged on the refusal of the court to ask the prospective jurors in their examination if the fact that the deceased was a white man and the defendants colored would in any way affect their deliberations. To this request the court replied: "I have asked and they have answered that they know of no reason why it would not be fair for them to try the case." We think with this statement the trial court in its discretion was not required to ask the jury the question requested by counsel for defendant. In support of this contention, counsel for defendant rely upon the case of Pinder v. State, 27 Fla. 370, 8 So. 837, 838, 26 Am. St. Rep. 75, where it was held error, in a trial where the defendant belonged to the negro race, to refuse to ask the jurors the question, "Could you give the defendant, who is a negro, as fair and impartial a trial as you could a white man, * * * upon the same evidence?"

As affecting the discretion of the trial court, in questioning or permitting the questioning of the jury on voir dire, local conditions may have an important bearing. The social situation in Florida, as between the white and colored races, may be such as to create a feeling of prejudice that would justify such an inquiry, while the conditions in another state or locality might be such that to refuse the question would not be regarded as prejudicial to the interests of the defendant; besides, we are clearly of the opinion that the general question put to the jurors by the court, as to their ability under all the circumstances to give the defendant a fair and impartial trial, in accordance with the evidence, was sufficiently broad and, comprehensive to embrace any question of prejudice that might be raised from the fact that the defendants belonged to the colored race and the deceased to the white race.

■ The principal defense offered was that the shooting was accidental. The defendant claimed that he accidentally squeezed the revolver and discharged it. Error is charged in the admission of the testimony of a detective, in rebuttal, to show that the revolver used could not be discharged until the hammer was pulled back. The most material part of the defense was the claim on the part of defendant Crawford that "he took this gun to intimidate somebody, and that he just

squeezed it and the gun went off in his hand twice." The revolver was in court and exhibited to the jury, and it was perfectly competent to produce the detective in rebuttal to establish the fact that the revolver could not possibly be discharged in the manner claimed by the defendant.

We now come to the consideration of the error assigned on the admission of proof in respect of the trip into Maryland for the purpose of hijacking. This objection does not go to the rule of law which forbids the admission of evidence of prior crime against a defendant, for the reason that no crime was committed in Maryland. While concededly the defendants went there with the intention of committing a criminal offense, the opportunity was not afforded, and no offense was committed. The error in the admission of this evidence consists in placing the reputation of the defendant in issue on a matter not related to the commission of the crime of which defendant was convicted. In a criminal trial, no one can place the reputation of a defendant in issue but the defendant himself.

That the evidence here admitted was most prejudicial and damaging, there can be no doubt. The district attorney, in his opening statement to the jury, stated, among other things, "that he intended to prove that the defendants attempted to hijack some liquor in Maryland on the night of the shooting." In support of this statement, the evidence of the codefendant Branson was adduced, giving in detail the plan the defendants had in making their expedition into Maryland. This evidence was not competent for the purpose of establishing any material fact in connection with the crime charged against the defendant. So far as the record discloses, it was no part of the plan of the defendants, either before going into Maryland or while there, to commit the crime charged.

The commission of the present crime had its inception when they drove back to the City and reached Sixth street and Rhode Island avenue, when the codefendant Hardy said: "Let's get that gas station." Right here is where the case for the prosecution begins. All evidence of the transactions of the defendants prior to that time was incompetent. The proof of the fact that the car in which the expedition had been made was stolen, and that it was suggested that they "change the tags on the car and keep it for further use," had nothing to do with the establishing of any fact connected with the crime charged. The only way that evidence of preceding events, affecting the reputation of the defendant, could become competent would be for the purpose of identifying and connecting the defendant with the commission of the crime charged.

In the case of Eagles v. United States, 58 App. D. C. 122, 25 F. (2d) 546, evidence that pistols found near the place of shooting were obtained by the accused in previous robberies, was held admissible only as connecting the accused with the possession of the pistols at the time of the homicide; but the jury, in respect of the evidence as to the previous offenses, was most carefully instructed by the court to consider its admission only for the purpose of identifying and connecting the defendants with the possession of the pistols. There is nothing connected with the present case which makes the rule laid down in the Eagles Case applicable, since nothing occurred prior to the inception of the crime charged which became necessary as proof of identification, either of the defendants or of the instrumentalities used in the commission of the crime. It was clearly error, therefore, in the light of the record in this case, to admit the testimony relating to the prior conduct and actions of the defendants on the evening the crime was committed.

The judgment is reversed, and the cause is remanded for a new trial.

ROBB, Associate Justice (dissenting).

The four men who were indicted stole a car and embarked on a criminal expedition. They drove into Maryland, where they remained about three-quarters of an hour. "On the way back" appellant Crawford suggested that "they change the tags on the car and keep it for further use." Near Sixth street and Rhode Island avenue the car stopped because of lack of gasoline, whereupon the plan was evolved to hold up the gasoline station.

In my view, no error was committed in permitting the government to prove the circumstances leading up to and culminating in the murder. A large part of the evidence now objected to was admitted without exception, and the details were developed by appellant's counsel during the cross-examination of the government's witnesses. The guilt of appellant is clear, he has had a fair trial, and I think the judgment should be affirmed.