## LAUGHLIN v. UNITED STATES.
### No. 6934.

United States Court of Appeals for the District of Columbia.

Decided July 22, 1937.

James J. Laughlin, of Washington, D. C., pro se.

Leslie C. Garnett and John W. Fihelly, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

The appellant was tried and convicted in the United States District Court for the District of Columbia upon two several indictments charging forgery and embezzlement.

In the first indictment it is charged in substance in the first count thereof that the defendant Laughlin on the 29th day of June, 1936, in the District of Columbia, having in his possession a certain paper bearing the signature of one Erma Miller, unlawfully, feloniously, and with intent to defraud, did falsely make and forge on said paper above the signature of "Erma Miller" the following words and figures, to wit: "June 29, 1936. Received of James J. Laughlin, Fourteen hundred ninety-two dollars and fifty cents ($1,492.50) account of Walter C. Johnsen," so that the said paper, with the falsely made and forged words and figures thereon, was of the tenor following, to wit: "June 29, 1936. Received of James J. Laughlin, Fourteen hundred ninety-two dollars and fifty cents ($1,492.50), account of Walter C. Johnsen. Erma Miller," against the form of the statute in such case made and provided; and in the same indictment it is charged in substance in the second count thereof that the defendant on the 31st day of August 1936, in said District, having in his possession the false and forged paper writing set forth above, unlawfully and feloniously, and with intent to defraud, did pass and utter the said paper writing as a true and genuine paper writing to one Harry L. Underwood then and there being.

In the second indictment it is charged in substance in the second count thereof that on June 19, 1936, in said District, the defendant, having in his possession the sum of $1,500 in money, the property of Walter C. Johnsen, which had been delivered and intrusted to defendant as the attorney of said Johnsen for the purpose of applying the same for the use and benefit of said Johnsen did feloniously, unlawfully, and fraudulently convert the same to his own use, against the form of the statute in such case made and provided.

The defendant entered a plea of not guilty to each indictment, and on motion of the United States Attorney and by consent of defendant, the two indictments were consolidated and tried together. The court proceeded to a trial of the case with ten qualified jurors, by and with the consent of the defendant. The jury, after hearing the testimony, the arguments of counsel, and the charge of the court, returned a verdict of guilty on the first and second counts of the first indictment, and guilty on the second count of the second indictment, being the counts above set out herein. Sentence was pronounced by the court, whereupon the defendant brought the present appeal.

The record discloses that prior to June 10, 1936, Walter C. Johnsen and Erma Miller, his wife, together with Edward Dietrich, were arrested and indicted in the District of Columbia upon certain felony charges, and afterwards, while they were confined in the district jail, the defendant Laughlin, who is an attorney at law, became their counsel and undertook to secure bail for them in order to procure their release from custody; that for the purpose of securing the release of Erma Miller the prisoner Johnsen paid over by check to the defendant Laughlin, as his attorney, the sum of $716, and Laughlin by depositing $500 of this sum secured Erma Miller's release on bail; that Laughlin thereupon, by the direction of Johnsen, paid to Erma Miller a sum variously stated at $183 or $188, purporting to be the residue of the above-mentioned sum of $716 after deducting therefrom the sum of $500 deposited for bail, and also certain expenses; that Erma Miller as a witness at the trial of the case testified that Laughlin paid over to her the sum of $183, and not the sum of $188, as such residue, and that she then signed and delivered a receipt to him for the payment, but that a receipt produced by Laughlin for $188 purporting to have been signed by her was not genuine and had not been signed by her; that afterwards defendant received from Johnsen the sum of $1,500 for the purpose of procuring bail for Johnsen and Dietrich, but Laughlin was unable to secure their release because of certain detainers for them from other jurisdictions; and Laughlin testified that with Johnsen's consent he thereupon paid the sum of $1,500 thus intrusted to him, less expenses reducing the amount to $1,492.50, to Erma Miller and took her receipt for the same. This was denied by Erma Miller, who testified that Laughlin had not paid her the sum of $1,492.50 or any part thereof, and that she had not signed the receipt produced by Laughlin or any other receipt for such a payment. It is this sum which Laughlin is charged by the second indictment with embezzling. After this time Johnsen procured the sum of $783.36 and turned the same over to Laughlin, according to Johnsen's claim,

as funds to be added to the $1,500 for the purpose of securing bail for Johnsen and Dietrich. It is not denied that this latter sum of $783 was received by Laughlin, but he claims that it was applied as part payment of his fee for services rendered up to that time for the parties. It is claimed by Laughlin that he was to receive the sum of $1,500 in full of his services, to be made up of $500 coming from the money deposited as bail for Erma Miller, and the proceeds less expenses of the check for $783.36 amounting to $685, leaving the sum of $315 still owing to him for his services. It appears that Johnsen wrote a letter to the United States Attorney for the District of Columbia complaining that Laughlin had received the funds above set out, and had retained the same without procuring bail for the parties. Whereupon the District Attorney advised Laughlin of the charges thus made against him, and expressed a willingness to hear his explanation of the same. That Laughlin, who at the same time was under charges filed with the Grievance Committee of the District Bar, wrote a letter to that committee and made a statement to the District Attorney, setting out among other things that he had paid to Erma Miller by Johnsen's order, the two sums above set out, to wit, $188 as the residue of the $716 check, and the sum of $1,492.50 as the residue of the $1,500 which had been intrusted to him by Johnsen, and that he had received from Erma Miller receipts for both sums when paid to her. At the time of making this statement to the District Attorney, Laughlin turned over to him various papers reflecting upon the transaction, among them being a receipt for $188, purporting to have been signed by Erma Miller on June 15, 1936, and a receipt for $1,492.-50, purporting to have been signed by her dated June 29, 1936. These papers were delivered by Laughlin to Harry L. Underwood, Assistant United States Attorney for the District of Columbia.

As appears above, the defendant Laughlin contended that he applied the sum of $716 received by him as above set out according to Johnsen's order by depositing the sum of $500 to secure bail for Erma Miller, and had paid the residue of the amount less certain expenses to her, being the sum of $188, and had received her written receipt therefor. It is not charged in the indictment that

Laughlin misappropriated any part of this sum, nor does the record disclose that he was guilty of such a misappropriation. It also appears by the evidence that Laughlin in fact received from Erma Miller a written receipt signed by her at the time when he paid this amount to her, and a paper purporting to be such receipt was delivered by Laughlin to the District Attorney together with his other papers. The issue therefore in the trial was limited to the question of whether Laughlin had paid over to Erma Miller the proceeds of the check for $1,500 which Johnsen had intrusted to him and which he had received and claimed to have paid to her. In other words, the issue is whether that sum had in fact been paid by Laughlin to Erma Miller or had been embezzled by him, and a receipt forged therefor.

At the trial the Government in submitting its case in chief offered to prove that the receipt which Laughlin claimed to have received from Erma Miller when he paid her the sum of $188 was forged. The court on objection made by defendant's counsel held that such testimony was not competent inasmuch as such an offense was not charged in the indictment and that the only purpose of admitting the evidence would be to show that Laughlin had committed forgery in a prior transaction not involved in the present issue. The court sustained the objection of the defendant and excluded the evidence.

Afterwards the government when introducing its rebuttal evidence called an expert witness for the purpose of submitting testimony tending to prove that the receipt for $188 produced by Laughlin was a forgery. The defendant repeated his former objection, but the court at this time held that such testimony was competent as reflecting upon the credibility of Laughlin as a witness. Accordingly the witness was permitted to testify that in his opinion the receipt was a forgery. The defendant objected and excepted to this ruling.

We think that the admission of this evidence by the court was error.

It is difficult to understand why the government sought to prove that the alleged receipt produced by the defendant Laughlin for the payment he made to Erma Miller of $188 was forged, inasmuch as it was not denied that he had paid her that sum (or $183 as claimed by her) and had taken a receipt for the payment there-

of. It was claimed, however, by the prosecution, that the paper was not the identical receipt which had been signed by Erma Miller and given to Laughlin, notwithstanding that it purported to be a receipt for a payment which was admittedly made to her by Laughlin. The transaction involving the receipt for $188 therefore was free from any charge of misappropriation of any of that part of the funds intrusted by Johnsen to Laughlin. Nevertheless, the testimony was admitted in rebuttal and went to the jury for its consideration as part of the evidence in the case. It could have no effect except to convince the jury that Laughlin in some way or other had become guilty of the crime of forgery in relation to the first transaction, that is to say, as proof of the commission by Laughlin of an offense similar to the one charged against him in the indictment.

It is a well-established principle of law that upon the trial of an indictment charging a specific crime against the accused it is not competent for the prosecution to put in evidence proof tending solely to show that the defendant had been guilty of other similar offenses.

The trial justice in his charge to the jury made the following statement concerning the testimony in question: "I would not admit that in evidence, as evidence, that, having been charged with a forgery, you would admit of what might be another forgery. The transaction, and all the testimony with respect to it, was admitted solely for the purpose of going to the credibility of the defendant."

It was error, however, in this case, for the court to admit in evidence and submit to the jury testimony concerning a collateral charge of forgery for the purpose of reflecting upon the credibility of the defendant. This rule is clearly set out in Smith v. United States (C.C.A.) 10 F.(2d) 787, 788. In that case the accused, who was charged with selling narcotics at a specific time and place, offered himself as a witness and on cross-examination was asked whether he had been engaged in the business of selling narcotics, which was entirely collateral to the matter with which he was charged. In reply thereto he denied such fact. It was held that the prosecution was bound by the answer of the witness and it was error to permit the prosecution to offer rebuttal evidence that

the defendant had been so engaged, citing Bullard v. United States (C.C.A.) 245 F. 837; Fisk v. United States (C.C.A.) 279 F. 12, 17. The court said: "The effect of the admission of the testimony so complained of was to show or tend to show against the accused the commission of crimes independent of that for which he was on trial. With certain exceptions not applicable here, it is the well-settled rule that this cannot be done. Boyd v. United States, 142 U.S. 450 [12 S.Ct. 292], 35 L. Ed. 1077; Newman v. United States (C. C.A.) 289 F. 712. In People v. Molineux [168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193], the court said: 'This rule so universally recognized and so firmly established in all English-speaking lands, is rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta.'"

See, also, Crawford v. United States, 59 App.D.C. 356, 41 F.(2d) 979; People v. King, 23 Cal.App. 259, 137 P. 1076; Wharton Criminal Evidence, vol. 1, § 343.

Accordingly, the judgment of the lower court is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

GRONER, J.

I think the conviction and sentence should be affirmed. I am not unmindful of the rule that evidence of other offenses distinct from that upon which the accused is on trial may not ordinarily be received. But the rule is subject to a number of exceptions.[1] One of these is proof of system or design. Here the two receipts, the one for $188 and the other for $1,-492.50 represented: The first, the balance of the sum of $716 received by accused on or about June 15; the second, balance of the sum of $1,500 received by accused June 20. Both sums were delivered to accused in a connected and single transaction, viz., to obtain the release on bail of the owner of the money and his wife.

While it is true the indictment charged forgery only as to the receipt showing delivery or payment of the larger sum, it was nevertheless proper, as I think, to show on the trial the forgery of the receipt for the smaller sum, since the obvious purpose of the evidence was to

---

[1] Wigmore on Evidence, vol. 1, § 315.

show that both receipts were a part of a common scheme or plan to deceive the District Attorney to whom the alleged victim had complained, and thus prevent or avoid the recovery of the $1,500 claimed to have been misappropriated.

Both receipts—if forged—were connected acts in a single design to defraud, and the one for $188 was an integral part of the design tending to show the formulation and execution of the scheme.

The fact that the court below mistakenly admitted the evidence of the forgery of the $188 receipt only as going to the credibility of the accused does not, in my opinion, change the result.

STEPHENS, Associate Justice.

I concur in the result. I think the evidence of forgery of the $188 receipt was not within any exception to the settled rule which forbids the admission in evidence against an accused of testimony tending to prove commission of a crime other than the one for which he is on trial.