**BILL'S AUTO RENTAL, Inc. v. BONDED TAXI CO., Inc. et al.**

**BONDED TAXI CO., Inc. et al. v. BILL'S AUTO RENTAL, Inc.**

Nos. 874, 875.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 25, 1950.

Decided March 22, 1950.

Rehearing Denied April 18, 1950.

Daniel J. Andersen, Washington, D. C., with whom R. Logan Hollowell, Washington, D. C., was on the the brief, for Bonded Taxi Co., Inc.

John W. Cragun, Washington, D. C., for Ramon Laboy Lopez.

Sandolphra Robinson, Washington, D. C., with whom Louis Sirico, Washington, D. C., was on the brief, for Joseph S: Lancaster.

William E. Stewart, Jr., Washington, D. C., with whom Richard W. Galiher and William H. Clarke, Washington, D. C., were on the brief, for Bill's Auto Rental, Inc.

Aubrey E. Robinson, Jr., Washington, D. C., with whom Belford V. Lawson, Jr., Washington, D. C., was on the brief, for James Willis Lancaster.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

These appeals arise from actions based on an automobile collision between a truck and a taxicab.

It appears that the following took place on the date of the collision. About 5 o'clock in the afternoon Joseph Lancaster was driving eastward along S Street, N. W. in a taxicab owned by Bonded Taxi Company. With him were three passengers, including his nephew James Lancaster, who became a plaintiff below. He was apparently driving within the speed limit but did not stop at the intersection of 12th Street as S Street is a through street at that point with stop signs controlling north and southbound traffic on 12th Street. He testified that he slowed down, "as I always do."

At the same time a truck owned by Bill's Auto Rental and operated by one Oliver was proceeding south on 12th Street, N. W. and approaching S Street. With the driver was a passenger Ramon Lopez. The evidence was conflicting as to whether the truck stopped in compliance with the stop sign. Though the truck, like the taxicab, was apparently being driven within the speed limit, neither of the drivers (nor the passengers) apparently saw the other vehicle until too late. The collision was a violent one, resulting in extensive personal injuries and property damage.

In the court below there were three actions plus one cross claim, involving five separate parties. In the first case (Municipal Court No. A 25–327), Bonded Taxi Co., sued Bill's Auto Rental.[1] In the second case (Municipal Court No. A 25–579), the truck passenger, Ramon Lopez, sued Bonded Taxi Co., its driver Joseph Lancaster, and Bill's Auto Rental. In the same case Joseph Lancaster filed a cross claim against Bill's Auto Rental. These two cases were on motion of James Lancaster, all parties consenting, ordered consolidated for trial. They were tried by a jury and in the first case a verdict was returned in favor of defendant Bill's Auto Rental. Bonded Taxi Co. appeals from that decision. In the second case the jury returned a verdict for all three defendants on the original complaint and for the cross defendant Bill's Auto Rental on the cross claim of Joseph Lancaster. In that case an appeal was taken by Lopez on his original claim and by Joseph Lancaster on his cross claim. The third case (Municipal Court No. A27–413) was filed by the taxicab passenger, James Lancaster, against Bonded Taxi Co., Joseph Lancaster, and Bill's Auto Rental. This case was consolidated with and tried together with the other two cases, but by the judge without a jury. The finding of the judge was in favor of plaintiff James Lancaster against Bill's Auto Rental only and in favor of the other two defendants, Bonded Taxi Co., and Joseph Lancaster. In that case the appeal was noted by Bill's Auto Rental.

Bill's Auto Rental defended on the ground that its truck was being driven without its consent or authorization. It also alleged contributory negligence by driver Lancaster and by the taxi company in hiring Lancaster.

In support of its denial of liability William Jaeger, the president of Bill's Auto Rental, testified as to the rental agreement made with Oliver about 10 a. m. on the day of the collision. He said that because he knew Oliver he did not demand a se-

---

1. The driver of its truck, Oliver, was originally named as a defendant but was never served. He had apparently left the city.

curity deposit or require a written agreement; that he rented the truck verbally at the rate of 60¢ per hour plus 7¢ a mile; that the truck was to be used to go to Virginia where Oliver hoped to sell some watches; that it was rented on the condition that Oliver return it before 12 o'clock noon. This was because Jaeger wanted it for his personal use after then and because it was Sunday, a day on which he closed his office at noon. He testified that he instructed Oliver to that effect and that Oliver "promised faithfully he would have it back before twelve o'clock."

Jaeger also testified that the truck was not returned by noon, that he waited in his office until 1:30 p. m., and that before leaving he wrote a note instructing Oliver to leave it on his return at a nearby gas station. He inserted the note under the mail box of Oliver's jewelry store two doors away. He then gave instructions to a gas station attendant across the street about taking the truck into custody. These instructions were to have the driver park the truck on the lot and to take the keys from him.

The gas station attendant gave partial corroboration to this testimony. He said that about 2 p. m. Oliver returned to the vicinity and parked the truck on the street. The attendant saw him go to his store; then he came into the gas station carrying a piece of paper which was presumably the note left for him by Jaeger. The attendant did not read the note but did repeat the instructions given him, telling Oliver that he was to leave the truck with him and that he was "definitely not to use it." Nevertheless, while he was busy with a customer, Oliver drove off in the truck.

The next Jaeger knew of the truck was when the accident, which happened at 5 p. m. or soon thereafter, was reported to him over the phone. He admitted that he billed Oliver for the use of the truck up until the time of the accident, even though his consent to its use had expired earlier. He also testified that he had never received any payment from Oliver.

Counsel for Bill's Auto Rental moved for a directed verdict, arguing that this un-contradicted testimony proved the "unauthorized use" of the truck and that as a matter of law the company could not be liable. This motion was denied and the issue of consent was treated as one of fact for the jury, which as we have seen ruled adversely to the several plaintiffs suing the rental company. In the case tried by the judge the finding was, as we have said, for the plaintiff, James W. Lancaster, against Bill's Auto Rental only, and a finding in favor of the other two defendants, the taxi company and its driver, Joseph S. Lancaster. We have before us the appeals of Bonded Taxi Co., and Lopez and Joseph L. Lancaster from the judgment which followed; we also have the appeal of Bill's Auto Rental from the judgment in favor of James W. Lancaster.

The first issue we must decide is whether the trial court was correct in submitting the question of consent to the jury. The District of Columbia Owners' Financial Responsibility Act provides: "Whenever any motor vehicle * * * shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall, in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner." [2]

Appellants argue that this statutory presumption was not met in the trial below, that because the collision resulted from the negligence of the truck driver, Bill's Auto Rental is liable as owner of the truck. They insist that the evidence as to the termination of consent was all self-serving in nature and not sufficient to overcome the statutory presumption of consent; and that the trial judge should have ruled as a matter of law that Bill's Auto Rental was liable as owner of the truck.

█ We think that the evidence presented by Bill's Auto Rental was sufficient to meet the statutory presumption of consent.

2. Code 1940, § 40—403.

There is a difference between meeting a presumption and overcoming or destroying one. When a statutory presumption is met by some credible evidence, it becomes, in a sense, something like an inference.[3] And when more than a single inference may be drawn from the evidence, then a question of fact is presented for jury determination.[4]

There is a line of decisions in this jurisdiction which clarify this proposition. In Rosenberg v. Murray, 73 App.D.C. 67, 68, 116 F.2d 552, 553, it was held that positive testimony overcame the presumption of consent. It was noted that the contradictions in the testimony were neither material nor substantial. Referring to the statute, the court stated: "The effect of this provision is simply to shift the burden of proof and to impose on the defendant owner the affirmative duty of proving that the car was not at the time of the accident operated with his express or implied consent. * * * This presumption continues until there is credible evidence to the contrary, and ceases when there is uncontradicted proof that the automobile was not at the time being used with the owner's permission."

There the presumption was met, overcome, and destroyed by credible evidence presented by the owner, and the trial judge was upheld in his ruling that the question was solely one of law.[5]

In a later case under the same statute,[6] the court reversed a directed verdict for a defendant cab owner. The trial court had granted the motion on the ground in part that "defendant's corroborated testimony, that the cab was being operated without his consent, was uncontradicted * * *," and also as coming within the principles of Rosenberg v. Murray. This was held to be error, for the reason that in such a situation a directed verdict requires "very strong, compelling evidence on behalf of defendant. It requires evidence which destroys all inferences and presumptions supporting plaintiff and which raises no doubts against defendant." Because there was certain testimony in that case which could be considered inconsistent, self-contradictory, and not necessarily credible, it was held that the issues had to be determined by the jury.

This court in Rice v. Simmons, D.C.Mun.App., 53 A.2d 587, 589, summarized the law thus: "If the presumption is overcome by uncontradicted proof, then a motion for a directed verdict for the defendant-owner will be granted. If, however, the evidence is contradictory, or reasonably subject to contradictory interpretations, the question of liability is for the trier of the facts."[7]

Similar language was very recently employed by the United States Court of Appeals in Marchetti and American Cab Association v. Olyowski, 86 U.S.App.D.C. ——, 181 F.2d 285. Citing its own holding in the earlier case of Simon v. City Cab Co., Inc., 64 App.D.C. 364, 78 F.2d 506, the court said: "* * * that, whenever the presumption is overcome by uncontradicted proof, a motion for a directed verdict should be granted; but that if the evidence is contradictory or *reasonably subject to contradictory interpretations, the question of liability is one for the jury.*" (Emphasis supplied.)

In the case now before us the trial judge refused to direct a verdict in favor of the defendant owner, apparently feeling that the statutory presumption, though neutralized by the uncontradicted testimony of Jaeger and the gas station attendant, was not completely overcome as a mat-

---

3. See Wigmore, Evidence, 3rd Ed., Sec. 2490.

4. Rice v. Simmons, D.C.Mun.App., 53 A. 2d 587.

5. There was a vigorous dissent by Justice Rutledge in that case, the principles of which have been repeated in subsequent cases. See concurring opinion of Justice Stephens in Hiscox v. Jackson, 75 U.S. App.D.C. 293, 127 F.2d 160, where he holds that Rosenberg v. Murray was in part "wrongly decided."

6. Hiscox v. Jackson, 75 U.S.App.D.C. 293, 127 F.2d 160, 161.

7. See also Gasque v. Saidman, D.C.Mun. App., 44 A.2d 537; Senator Cab Co. v. Rothberg, D.C.Mun.App., 42 A.2d 245.

ter of law. Apparently he also had in mind, along with the other evidence, the admission that the owner had charged the driver for the full period of use, some six hours beyond the termination of his "consent." In so ruling the judge was not determining the absolute credibility of the two witnesses, or ignoring the fact that contradictory inferences could be drawn from the evidence. We think it would have been error to rule otherwise, just as it would have been error to direct a verdict *against* the owner of the truck. Under the circumstances of this case we are clear in our view that it was for the jury to "judge the cogency and persuasiveness of the evidence and to weigh it for credibility, evasions, and contradictions." [8]

Another error complained of is the admission of the police traffic record of driver Joseph S. Lancaster. This was brought into the case twice; once during the cross examination of Lancaster, and the second time by a police officer who was summoned into court with the traffic division records. Reading from such records he was permitted to testify that Lancaster had forfeited collateral on some three charges of speeding between 1943 and 1948; that there were eight other charges of traffic violations; two of driving to the left of a loading zone, three of disobeying a signal device, and one each of failure to give full time and attention, passing red light, and improper turning. The officer testified that Lancaster had forfeited his collateral on each of these charges.

This evidence was admitted over timely objections of counsel for driver Lancaster and the Bonded Taxi Company, who later also moved to strike it. Two grounds were relied on for their admission; to impeach the credibility of driver Lancaster after he testified that he slowed down at the corner "as I always do;" and as bearing on the negligence of the Bonded Taxi Company in hiring Lancaster. We must rule

that the evidence was not admissible on either ground.

■ We think it is clear that there was basic and prejudicial error in permitting evidence of Lancaster's "record" because there was no record at all within the meaning of the statute. The testimony related only to *charges* made against Lancaster.[9] It was not shown or attempted to be shown that any one of such charges resulted in a conviction. Three times it has been expressly held in this jurisdiction that under the statute involved nothing less than a conviction may be shown, and that it is improper to receive evidence of a mere accusation, arrest or indictment. Chebithes v. Price, 59 App.D.C. 212, 37 F.2d 1008; Sanford v. United States, 69 App.D.C. 44, 98 F.2d 325; Thomas v. United States, 74 App.D.C. 167, 121 F.2d 905. In view of these decisions it was clearly error to admit Lancaster's so-called record for the purpose of impeaching him.

■ Equally serious was the error in admitting the record in connection with the allegation that Bonded Taxi Co., was negligent in hiring Lancaster. The evidence had no place in the case for such purpose. If the driver was negligent in the operation of the taxicab, the taxi company was of course answerable for such negligence, irrespective of any negligence on its part in hiring him. Hence his former record was irrelevant to any valid issue in the case.

We must hold that this error was so basic as to affect the judgments in the first two cases (Municipal Court Nos. A 25-327 and A 25-579, those tried by the jury) and to require reversal thereof. The error does not, however, affect the validity of the judgment in Case No. A 27-413, for in that case (which, as we have seen, was tried without a jury) the judge exonerated the taxi company and its driver, and imposed liability solely on Bill's Auto Rental. And the only errors assigned by that de-

8. Schwartzbach v. Thompson, D.C.Mun. App., 33 A.2d 624, 626.

9. Note that even a plea of guilty, as distinguished from a forfeiture of collateral,

may not be shown, unless it was followed by judgment and sentence of the court. Crawford v. United States, 59 App.D.C. 356, 41 F.2d 979.

fendant deal with the judge's refusal to rule in its favor as a matter of law in connection with the statutory presumption. In this the judge was not in error, for as we have already said, the issue was one of fact.

Another question requires some mention, because it is likely to arise on the retrial. It has been argued vigorously here that there was error in permitting evidence of injuries sustained by Joseph S. Lancaster in an earlier accident and the details of a suit he filed in connection therewith. Since we are reversing on another ground we need not discuss this point at any length. It is sufficient to say that it will be proper to show on the retrial whether there was any medical connection between the two sets of injuries, whether any part of the injuries he claimed in this case were really sustained in the earlier accident, and whether and to what extent the injuries here involved were new or separate ones, or only aggravations of earlier injuries.

We think we should mention another matter, not so much in a spirit of criticism as in an effort to help avoid the kind of difficulty or confusion which attended the submission of these cases to the jury and the rendition of their verdict, the details of which we need not recite. This was doubtless due to the large number of parties, their complicated interrelationships, and the difficulty of aligning the issues. Commendably, the trial judge, with the cooperation of counsel, attempted to make the jurors' task easier by preparing for them a list of some eleven possible verdicts they might render. Regrettably, however, this did not obviate the confusion. Because such situations are always unfortunate we venture to recommend to the Municipal Court as we have done before,[10] the more frequent use of special verdicts as authorized by Municipal Court Rule 45, in multiple controversies or complicated situations like this one. Such procedure tends to produce better defined issues of fact, better focused legal questions, and clearer and safer results.

Judgment in Case No. A 27-413 affirmed.

Judgments in Cases A 25-327 and A 25-579 reversed with instructions to award a new trial.

10.  Bellmore v. Baum, D.C.Mun.App., 68 A.2d 588.