MILSTEAD v. DISTRICT OF COLUMBIA.

No. 1231.

Municipal Court of Appeals for the
District of Columbia.

Argued July 28, 1952.

Decided Aug. 22, 1952.

Eugene X. Murphy, Washington, D. C.,
with whom Rex K. Nelson, Washington,
D. C., was on the brief for appellant.

Hubert B. Pair, Asst. Corp. Counsel,
Washington, D. C., with whom Vernon E.
West, Corp. Counsel, and Chester H. Gray,
Principal Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and
HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

The District of Columbia sued Earl E.
Milstead for damages sustained by one of
its ambulances when struck by a tractor-
truck owned by Milstead. Trial was had

without a jury and resulted in finding and judgment in favor of plaintiff, and in this appeal by defendant.

Defendant's first contention is that "the trial court erred in holding that his motor vehicle was operated at the time of the accident with his consent, actual or implied, in contemplation of the Automobile Financial Responsibility Law." Code, 1940, 40–403.[1]

■ The cited statute casts the burden of proof as to the question of consent upon the defendant-owner. Rice v. Simmons, D.C.Mun.App., 53 A.2d 587, and cases there cited. Where there is proof that a defendant owned the vehicle involved in a collision and there is no credible evidence on behalf of defendant tending to negative the statutory presumption, a plaintiff who has otherwise established liability is entitled to a directed verdict. Hiscox v. Jackson, 75 U.S.App.D.C. 293, 127 F.2d 160. On the other hand the presumption may be neutralized or overcome by uncontradicted proof that the vehicle was not at the time being used with the owner's permission; and when the presumption is thus overcome a motion for a directed verdict (or a favorable finding as a matter of law) for the defendant-owner is proper. Rosenberg v. Murray, 73 App. D.C. 67, 116 F.2d 552; Conrad v. Porter, D.C.Mun.App., 79 A.2d 777, affirmed, D.C. Cir., 196 F.2d 240; Rice v. Simmons, supra.

Between these two extremes is the situation where a defendant comes forward to challenge the statutory presumption by some credible evidence but such evidence is not strong enough to entitle him to judgment as a matter of law. Then the question of defendant's liability resolves itself into an issue of fact. Marchetti v. Olyowski, 86 U.S.App.D.C. 215, 181 F.2d 285; Hiscox v. Jackson, supra; Bill's Auto Rental v. Bonded Taxi Co., D.C.Mun.App.,

72 A.2d 254. (Appeal denied by United States Court of Appeals, July 28, 1950.) It is therefore necessary to examine the evidence adduced at the trial of this case in order to determine whether defendant should have been granted judgment as a matter of law.

Milstead, the defendant, was the owner of the tractor-truck involved and he paid the salary of one Whye, the operator thereof. By verbal arrangement he leased the truck, with the driver, to B & F Transportation Co., and Whye was to take his instructions from that company. On the day in question, according to Milstead himself, he telephoned the B & F Co. and told them that one of his trucks had become disabled and "asked them to send a driver out to pick it up." (On cross-examination he changed this and said that he had specifically requested that his driver, Whye, be sent out to pick up the disabled truck.) When Whye got into the truck he found one Russell sitting behind the wheel and Russell "stated that he wanted to drive this tractor because it was a Dodge and Mr. Fox was going to buy a new Dodge; that he did not give him permission to drive nor did he tell him not to drive; that Russell started down New York Avenue to pick up a spring for Fox at Martin & Boyds on New York Avenue, and they were then going out to the highway to pick up Mr. Milstead's trailer;" and at 3rd Street and New York Avenue the collision took place.

An immediate question to be met and answered is how was the issue of defendant's consent affected by the fact that Russell and not Whye, his own employee, was driving the tractor? Necessarily coupled with that is the question as to what mission the truck was on at the time. Defendant testified that he had specifically instructed his drivers that they were not to permit anyone else to operate the trucks. But

1. This section of the Code provides: "Whenever any motor vehicle * * * shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall, in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner."

that part of his testimony was directly contradicted by Whye who said "that he had not been instructed by the defendant not to permit anyone else to drive the tractor." It was the function of the trial judge to resolve this conflict between the testimony of defendant and that of Whye. If he resolved it in favor of defendant he could reasonably have inferred and found that defendant had neither expressly nor impliedly consented to the operation by Russell. But if he resolved it *against* defendant there would have been nothing left from which it could have been authoritatively said as a matter of law that defendant had carried his statutory burden of proof and overcome the presumption, because the remaining evidence on behalf of defendant was susceptible to conflicting inferences. For example, the terms of the alleged oral lease were not in evidence; Whye, although an employee of defendant, was under the control of B & F; despite the fact that the truck and driver were not usually and generally under the control of defendant they had on this particular day and time been dispatched on a mission for defendant.

■■■ While the trier of the facts might not necessarily conclude from this obvious informality in the dealings and course of conduct among the parties, that there was implied consent, we cannot say that he was required to conclude or infer the contrary. There was not in this case the clear and unequivocal negation of the presumption which was found in Rosenberg v. Murray and Conrad v. Porter, both supra. There is not in this record the positive testimony that Russell operated the truck without the knowledge, authority or consent of defendant that was to be found in the Rosenberg case, nor an admission by defendant's employee that he had violated his employer's instructions in permitting a stranger to operate the vehicle, as in the Conrad case. Rather defendant's evidence as disclosed by the record contains, as we have pointed out, inconsistencies and self-contradictory statements leaving doubt as to the absolute credibility of the witnesses. Since determination of credibility and resolving testimonial conflicts and inferences are typical jury functions, whether or not defendant had met his statutory burden and thus overcome the presumption against him was in this case a question for the trier of the facts. Hiscox v. Jackson, Conrad v. Porter, both supra. " * * * if the evidence is contradictory or reasonably subject to contradictory interpretations, the question of liability is one for the jury." Marchetti v. Olyowski, supra [86 U.S.App.D.C. 215, 181 F.2d 287]. Precisely in point is Bill's Auto Rental v. Bonded Taxi Co., supra.

The applicable law under this statute has been stated very clearly in these words: "To pass from a directed verdict for plaintiff, through the area of jury questions, to a directed verdict for defendant, requires very strong, compelling evidence on behalf of defendant. It requires evidence which *destroys all inferences and presumptions supporting plaintiff and which raises no doubts against defendant.* Here * * * defendant's case is not so strong and plaintiff's so weak as to make a directed verdict for defendant proper." (Emphasis supplied). Hiscox v. Jackson, supra [75 U.S.App.D.C. 293, 127 F.2d 161].

Applying this test and the others above-stated to the facts as we have recited them we have no difficulty in reaching the conclusion that the trial judge was not required to pass "through the area of jury questions" and absolve defendant of liability as a matter of law. Had the trial been by jury the judge could not properly, on the inconclusive evidence offered by defendant, have taken the case from the jury. There being no jury in this case and he being the trier of the facts, it is equally plain that he could not properly have ruled in favor of defendant as a matter of law.[2]

■■■ There remains to be discussed the questions of the negligence of the driver of defendant's truck and the contributory negligence of the driver of the ambulance. The evidence on these questions was much

2. For a full discussion of this subject, see the recent annotation in 5 A.L.R.2d 242 to 249.

too lengthy and involved to be recited in detail here. In addition to the ambulance driver the plaintiff offered the testimony of three other eye-witnesses and that of a policeman who came on the scene to investigate, and who made certain measurements. For the defendant only Whye testified as to the facts of the collision. The driver Russell was not produced and Whye testified that Russell had on the day before the trial promised to come to court with him to testify, but that when he went looking for him Russell had left town.

The judge also had before him seven photographs showing the nature of the impact and the damage to the two vehicles. He also had testimony as to the point of impact, skidmarks of the truck, positions of the two vehicles, relative grades, and other related information. Despite denials and contradictions the evidence would clearly have supported a finding that the ambulance was on an emergency call; that its emergency red light was operating; that the driver was constantly sounding his siren; that as he was going north on 3rd Street the light at New York Avenue turned red just before he entered the intersection;[3] that all traffic from all directions had come to a halt; that the operator of the ambulance substantially reduced his speed and proceeded into the intersection; that the defendant's tractor going west on New York Avenue continued into the intersection and struck the ambulance at the rear of its right side. It would serve no useful purpose to give a detailed discussion of defendant's version of the collision because it is clear that the trial judge was not called on to disregard the strong factual showing made by plaintiff's witnesses. He was fully justified by the evidence in holding that the driver of defendant's truck was alone negligent in failing to yield the right-of-way to the ambulance, and that such negligence was the proximate and producing cause of the collision. The ultimate decision on the basic questions of negligence and contributory negligence rested on issues of fact. There is nothing in this case which would remotely justify us in ruling that the trial court incorrectly decided such issues.

Affirmed.

3. Among the traffic regulations before the court were Article II, Sec. 6, which provides that the driver of an authorized emergency vehicle equipped with an emergency red lamp, and who sounds an audible signal by siren, may proceed past a red stop signal after slowing down for safe operation; and Article IX, Sec. 50, which provides that under such circumstances "the driver of every other vehicle" shall yield the right-of-way, pull over to the curb and stop, and remain there until the emergency vehicle has passed.