UNITED STATES of America, Plaintiff-Appellee,

v.

Charles Arthur STALLINGS, Defendant-Appellant.

No. 29273.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1971.

---

**1058**

John I. Van Voris (court appointed), Thomas C. MacDonald, Jr., Tampa, Fla., for defendant-appellant; Charles Arthur Stallings, pro se.

John L. Briggs, U. S. Atty., Bernard H. Dempsey, Jr., Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before TUTTLE, DYER AND SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

Stallings appeals from a conviction and sentence under the Dyer Act, principally on the ground that the trial court erred in admitting, over objection, testimony that on the day before the admittedly stolen car was driven from Wilmington, North Carolina, to St. Petersburg, Florida, Stallings had escaped from a prison farm or youth detention center in North Carolina. He also contends that there was insufficient evidence of Stallings' knowledge that the automobile in which he and four others admittedly had driven from Wilmington, North Carolina to the state of Florida was a stolen car.

■ We can readily dispose of the second contention in that it is clear from testimony of two FBI agents, that Stallings had voluntarily stated to them that Strohauer, the admitted thief of the car, had told them in Wilmington before they started for Florida that the car had been stolen. No complaint was made that the statements made to the agents were in any way vulnerable to challenge as not being voluntary.

■ Dealing with the second question, we conclude that the admission by the trial court over the strenuous objection each time it was offered of testimony that Stallings had escaped from a penal institution the day before leaving for Florida was prejudicial error.

Stallings did not take the witness stand, and, therefore, his character was not put in issue on the trial. The presumption of good character, just as the presumption of innocence in all other respects was his throughout the trial. We are not here dealing with a case in which the accused testifies on his own behalf, under which circumstances, and under certain limitations, he can be impeached by the showing of prior felony convictions.

The challenged evidence came in when one of the five men involved, Forbes, was on the witness stand testifying on behalf of the prosecution. After having been asked, "What did you do on or about September 8, 1969," and after the trial court had overruled a motion by counsel for the accused to be warned of his Fifth Amendment rights, government counsel then said, "What did you do Mr. Forbes?" Forbes then answered, "I escaped from the Ulmstead Unit in North Carolina." Then he was asked, "With whom?" Thereupon counsel for the defendant said, "Your honor I will object to that as not being relevant."

Before a ruling was had on this motion, the prosecution then said, "With whom?" The witness answered, "Charles Stallings and Rodney Wiggins." Thereupon, counsel for Stallings requested an opportunity to approach the bench and he then made the following motion, "I am going to move for a mis-

trial on the ground that the prosecutor has deliberately put in evidence of an independent crime, namely, that of escaping from prison, and the only purpose of it is to inflame the jury against my client, and I don't believe he can get a fair trial from this jury now that this evidence is in before the jury."

The trial court overruled the motion and objection and left the evidence before the jury that the three of them had escaped from the penal unit on the day before the witness later testified they had left for Florida.

Subsequently, FBI agents were called to testify, and each of them commenced his testimony by saying, in response to a question by the government's counsel as to what Stallings said on the occasion of making a confession, "He advised that he and two other individuals, whom he said he did not care to identify, escaped on or about September 8, 1969." At this point his counsel objected again, stating, "Your honor again I will object. This portion of the so-called statement is clearly inadmissible, it has no relevance to the Dyer Act charge that we are here on today."

The court overruled the objection and said, "Well, let's hear what he said in his own words." Thereupon the witness repeated by saying, "He said that on or about September 8, 1969, he and two other individuals escaped from the Ulmstead Youth Center in Butner, North Carolina. From there they went by bus to Wilmington, North Carolina, and went to a friend's house * * *." The second agent, upon taking the stand, started out by answering the prosecuting attorney's question, "What did Mr. Stallings tell you, Mr. Pieper?" by saying, "Stallings said that he and two others had escaped from a youth center * * *." Thereupon, counsel said, "Your honor, again, for the record, I am going to object to any reference to this so-called escape from a youth correctional institution." This objection was also overruled, although the court then stated, "Now the jury will remember—if I didn't tell you this before, I will add this to what I have said about the other things that are not at issue in the case. We are not trying any of these men, or this man on trial, for escape. We are trying them for transporting this Chevrolet car from North Carolina to Florida knowing it to be stolen, and these other things that get into the story are merely to conform to what was said and done, but they are not issues in this case. All right—but I can't dress up a statement, I have got to leave it the way it is and that is for you to figure it out, what you get out of the statement. Go ahead."

At the conclusion of the case counsel for appellant again moved for a mistrial in the following language: "This has to do with your honor's overruling my objections to Mr. Long, the FBI agent's testimony as to the statement that my client made to him, and as your honor will recall, he prefaced his remarks with reference to the statement by saying that my client had told him that on the day before the automobile was driven from North Carolina to St. Petersburg —on the day before that he escaped from, I believe, a youth correctional institution in North Carolina, and your honor overruled it, I believe, subject to possibly tying it in as to relevancy at a later time.

"And I would like to renew my motion at this time because it is quite clear now that this was entirely irrelevant and can serve only to inflame the jury against my client, and I don't believe that I can get now a fair trial from this jury." The trial court overruled this motion.

Finally, the government counsel commented upon the recent escape by Stallings and his companions in his argument to the jury, arguing that they spent a cache of coins in the car on the trip to Florida because "they were recently escaped—they had recently escaped from confinement, they needed that money in order to get down here. Without that money they could not have gotten down here."

It is too clear that in general the admission of evidence of a defendant's illegal or bad conduct in other matters is inadmissible when he is on trial that it hardly requires citation of authority. However, the proposition is well stated in Sang Soon Sur v. United States, 9 Cir., 1948, 167 F.2d 431:

"Appellant entered the trial with a presumption of good reputation. He did not put his reputation in issue. Crawford v. United States, 59 App.D. C. 356, 41 F.2d 979. The introduction of evidence of the commission of independent crimes through the medium of the statement or confession cannot be justified on the ground that the relevant portions thereof could not be segregated from the irrelevant * * * Here the effect of the challenged evidence could have had no other effect than to divert the minds of the jurors from the real issue and we are unable to say that it was not a determining factor in the minds of the jurors in reaching their verdict of guilty. As was said in the case of United States v. Dressler, 7 Cir., 112 F.2d 972, 977: '* * * It is inconsistent with our traditional conception of a fair trial to permit any information to go to a jury which might influence a jury to convict a defendant for any reason other than that he is guilty of the specific offense with which he is charged.'"

Of course, evidence of bad conduct or of a different crime is not inadmissible if it is otherwise relevant to the proof of the accused's guilt of the particular offense for which he is standing trial— that is to say, it is not irrelevant to show that one has illegally entered a house if he stands trial for an offense committed while illegally present and the illegal entry is a part of the continuing acts for which the accused is being tried. Here, the only justification the government gives for offering and insisting on the retention of this testimony is that the jury might infer that Stallings committed the offense of transporting a stolen vehicle, knowing it

to have been stolen, across state lines because he was anxious to make good his escape from a penal institution which had occurred the day before at some distance away from Wilmington, North Carolina, where the interstate trip began. We think this connection is too tenuous to permit the introduction of such prejudicial evidence.

We conclude that the prejudice from repeated admission of this testimony relating to Stallings' escape from the penal institution in North Carolina so far outweighed any proper benefit to the prosecution as to require the judgment of conviction and sentence to be set aside.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.