**UNITED STATES of America**

v.

**Horace E. LEE, Appellant (two cases).**

**No. 72–1782.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 23, 1974.

Decided Dec. 27, 1974.

Certiorari Denied March 31, 1975.
See 95 S.Ct. 1451.

Ronald N. Cobert, Washington, D. C. (appointed by this court), for appellant.

Jeffrey T. Demerath, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Barry W. Levine and Peter R. Reilly, Asst. U. S. Attys., were on the brief for appellee.

Before TAMM, LEVENTHAL and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

Appellant Lee was found guilty of armed robbery,[1] assault on a police officer while armed with a dangerous weapon,[2] and assault with a dangerous weapon upon one Harry Loss,[3] a clerk at the motel that was robbed. All offenses were committed on June 15, 1971. The principal issues argued on appeal question the admissibility of two items of evidence: First, a wallet belonging to one Wooley, the hold-up man in the robbery, which was found and seized in a warrantless search of appellant's automobile. Second, evidence admitted on cross-examination that appellant had entered a plea of guilty to a violation of the narcotics laws on which a judgment had not yet been entered against him.

As the Government now concedes, the conviction for assault with a dangerous weapon upon the motel clerk must be vacated because it is a lesser included offense of the armed robbery of the same person.[4] We affirm the remaining convictions.

I

Evidence at trial proved that appellant was a dealer in narcotics. Appellant's alleged accomplice, one Wooley, was a veteran who had become addicted to narcotics while serving in Vietnam. He returned to the United States in April of 1971 and shortly thereafter began purchasing narcotics from appellant on a regular basis. He spent his entire savings of $3700, ran up a substantial debt to appellant and on June 14, 1971, asked appellant to sell him more narcotics on credit. Appellant refused to extend any further credit but suggested that Wooley could make some money by joining him in a robbery of a motel he had "lined up" with the motel attendant. Wooley was desperate for narcotics and agreed to the plan. Appellant than gave Wooley a gun and a small amount of heroin to ease his craving and drove him to the motel at about 2 A.M. on June 15, 1971. Before he entered the motel, Wooley, at appellant's suggestion, left his wallet in the car to avoid losing it during the robbery. Appellant, who had a gun on his person, parked the car down the block and returned to a prearranged location in some bushes "in front of the motel" to "cover" Wooley's "back" from the outside.

Wooley then entered the motel office, held up the attendant, Harry Loss, and fled with a bag of money. As he went out the front door, he almost collided with a police car which was pulling into the driveway. At that time he heard a shot, threw away his gun and ran. He crossed some bushes and passed appellant who was standing below a wall (all

---

1. D.C.Code §§ 22–2901, 22–3202.

2. *Id.*, § 22–505(b).

3. *Id.*, § 22–502.

4. *See* United States v. Johnson, 155 U.S.App. D.C. 28, 475 F.2d 1297 (1973); United States v. Wimbush, 154 U.S.App.D.C. 236, 475 F.2d 347 (1973).

shown on Exhibit 3). Appellant told him to run in the street, but shortly thereafter Wooley fell on the pavement and was arrested by the officer who had pursued him from the motel. As Wooley fell, he dropped the bag of money which the police officer apparently did not notice. After Wooley had been taken back to the motel, a red and white late model Cadillac with Maryland license plates pulled out from behind a truck at the curb (about where appellant had parked his car), drove up the street, stopped where Wooley had dropped the money bag, removed something from the bag and then drove off.[5] Upon returning to the patrol car, the officer discovered that the right front window had been shattered. Wooley's gun was later recovered and tests showed it had not been fired. Appellant's gun was never found and the spent bullet could not be located in the patrol car.

After his arrest Wooley told the police the nickname of his accomplice, described him, recounted what he knew about where the accomplice lived,[6] and gave a description of the car. About 3 or 4 A.M. the next morning (June 16th), the police found a car which matched the description they had been given of the car used by the accomplice. It was then parked in a Safeway parking lot about one hundred yards away from 238 Rhode Island Avenue, N.W., where the police expected to find appellant. Appellant was arrested shortly thereafter at that address and was informed that the police considered his car to be evidence in a robbery. At their request he gave them the keys to the car. The police then "went to the car, opened up the trunk, made a quick search, . . . just a check mainly for weapons . . . . We didn't see anything. We took it to the station. At the station house, we went to the car again, this time [the two policemen] went to the car and a wallet was found" (Tr. 102). This wallet was later identified as belonging to Wooley. No warrant to search the car was ever obtained.

At his trial appellant admitted his narcotics activities and some narcotics dealings with Wooley, but he denied any involvement in the motel robbery and further relied upon an uncorroborated alibi that he was at "Snooks" gambling establishment at the time of the robbery. He claimed that the wallet must have fallen from Wooley's pocket when he and Wooley had an argument the evening of June 14th after Wooley had demanded that appellant sell him narcotics on credit. So to this extent he corroborated his relationship with Wooley. The Government was permitted to impeach appellant by introducing a prior conviction and his prior guilty *plea* on an unrelated narcotics offense.

Appellant was sentenced on July 14, 1972, and appealed (Case No. 72–1782). This appeal was later held in abeyance at the request of the Government to allow a determination as to whether the admission into evidence of the prior guilty plea violated an alleged bargain that the Government had made in return for that plea in the earlier unrelated narcotics case. Appellant subsequently made a motion for a new trial, terming the alleged plea bargain newly discovered evidence. Following a hearing, this motion was denied on the ground that no plea bargain had been made. Appellant also appeals from this decision (Case No. 74–1305).

## II

It is appellant's contention that Wooley's wallet was obtained in an unconstitutional search of his car and that the trial court committed reversible error in denying his motion to suppress such evidence. Basically his claim is that the police did not have probable cause for the search and that the search

---

5. Sixty dollars was taken in the robbery, but a paper bag that the police subsequently recovered from the area where Wooley was arrested contained only $13.

6. Wooley originally gave a Northeast Washington address for appellant, whereas the correct address was in Northwest Washington. This caused some 24 hours' delay in locating appellant.

at the station house which turned up the wallet required a search warrant. We disagree.

In our view appellant's arguments are authoritatively answered in the negative by the decision in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In that case, the appellant was apprehended less than an hour after an armed robbery of a filling station and within two miles of the scene of the crime in the company of three other men in a blue compact station wagon which met the description of the robbers' getaway car. Following the arrest of the occupants, the car was driven to the police station where it was thoroughly searched. The police found two revolvers, certain cards belonging to one of the filling station attendants who had been robbed and other objects which had been taken in the robbery. The Court ruled that probable cause existed to justify the arrest without a warrant, but it noted that the search at the police station could hardly be said to have been made incident to the arrest. It held, however, that there was probable cause to search the car for guns and stolen money and that autos may be searched without a warrant under circumstances that would not justify a similar search of a house. The difference is justified by circumstances

> where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

399 U.S. at 48, 90 S.Ct. at 1979, citing Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The validity of the search of the car thus depended not upon being incident to the arrest but upon the officer having reasonable cause to believe that "the contents of the automobile offend against the law." 399 U.S. at 49, 90 S.Ct. at 1980. The Court further observed:

> Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search.

*Id.* at 51, 90 S.Ct. at 1981 (emphasis added).

For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. *The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained.*

*Id.* at 52, 90 S.Ct. at 1981 (emphasis added).[7]

We find the holding and reasoning of Chambers v. Maroney, *supra,* to be controlling here. Probable cause existed for the seizure of appellant's car. It fitted the description given by Wooley and another witness. It was found in the vicinity of a suspect meeting the description given by an accomplice (Wooley). The suspect voluntarily surrendered his keys to the police, and it was evident that they fit the car. This tied the car to the evidence that a car of that description had been driven by Lee to transport Wooley to the scene of the robbery. It was not unreasonable to expect that evidence of the fruits of the crime would still be in a car used in that crime 24 hours after the offense. It cannot be assumed that those participating in the crime would certainly destroy such evi-

---

7. *See also* Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

dence since those who violate our criminal laws do not always act intelligently and often leave incriminating trails.

Nothing more was necessary to justify seizing the car at the scene of the arrest, but appellant argues that "exigent circumstances" were not sufficiently present to justify the search at the station house without a warrant. It seems clear that the police would have been justified in conducting a thorough search of the car on the parking lot since to do otherwise would hazard the loss of a valuable piece of potential evidence. The car was a "fleeting object" found in what might be termed a possibly hostile neighborhood. The police could not know whether appellant had additional accomplices or friends who might have viewed his arrest and might attempt to remove or destroy any incriminating evidence left in the car or wipe off any fingerprints (Wooley's, if they existed) if the car was not seized. There was also a possibility that incriminating fingerprints may have been obliterated by the elements if the car was left in the lot. In Chambers v. Maroney, the Court could see no difference between seizing and holding a car before presenting the probable cause issue to a magistrate and carrying out an immediate warrantless search of the car, where exigent circumstances exist. We find that such circumstances existed in the present case as well. Therefore, either action would have been clearly reasonable, and this is the constitutional test.

We further find, as did the Court in *Chambers,* that the probable-cause factor still existed at the station house, so the conduct of a search there without a warrant was also reasonable. A quick glance into the trunk and the rest of the car was certainly desirable as a merely precautionary matter before the car was moved, but it was difficult to make a more detailed search of the car where it was found on the parking lot. It was nighttime and poor visibility would interfere with the search. Moreover, any search would necessarily include a fingerprint check of the car and that could be done better at the station house. It was impracticable to obtain a search warrant since it would be some hours before a magistrate would be available. The policemen who had made the arrest and seized the car would probably be going off duty, and it was desirable that they continue their investigation without interruption since they had considerable knowledge of the background facts and knew what evidence might be material. Also, every hour that the search was delayed increased the hazard that something would happen to any material evidence that did exist. For example, incriminating articles could be taken or fingerprints could disappear.

Delay also could affect the value of any evidence that was obtained. Twenty-four hours had already passed since the robbery, and any further delay in the discovery of material evidence could weaken its probative value with the jury. With a longer delay, the defense might more successfully argue to the jury and the court that evidence obtained from the car had resulted from acts that occurred after the robbery and acts by other persons. In addition, appellant was being held under arrest on the basis of a statement by an alleged accomplice. Since this type of evidence is traditionally suspect and needs corroboration, the police had a duty to act as quickly as possible to obtain evidence that might exonerate or incriminate. Thus, we find the existence of sufficient exigent circumstances to justify a thorough search at the station house. Coolidge v. New Hampshire [8] and United States v. Collins [9] are clearly distinguishable on their facts since neither case presented facts justifying a conclusion that exigent circumstances existed.

### III

■■ Appellant also contends that reversible error was committed when he was impeached on cross-examination by

---

**8.** 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

**9.** 142 U.S.App.D.C. 100, 439 F.2d 610 (1971).

admission of evidence of his prior guilty *plea* in a narcotics case and by the court's failure to give an immediate cautionary instruction.

The statute in the District of Columbia authorizes attacking the credibility of witnesses by the admission of prior *convictions.*[10] Under our decisions this obviously requires a "conviction," *i. e.,* a judgment of conviction and sentence, and a mere plea of guilty is insufficient.[11] The admission of the plea was thus error, but the facts here are such as to cause us to conclude that the error was harmless.

Throughout the trial there were many other references to appellant's involvement with narcotics. *In his own testimony* appellant stated that he had met Wooley through "other" narcotics dealers and that the only thing the two had in common was "discussions of narcotics."

He also testified that the only reason he told Wooley on June 14th that he did not have any narcotics was that Wooley had told him "he didn't have any money." Testimony as to the guilty plea was thus largely cumulative to this testimony which appellant himself introduced.

■ Appellant at trial also consented to the admission of the *plea* on the "narcotics charge." During the discussion between appellant and the court regarding the admission of prior convictions, the following exchange took place:

THE DEFENDANT: The only objection I would have is the robbery conviction, he could bring up what we were just speaking of, you know.

THE COURT: The narcotics charge, the *plea* to the telephone count [use of telephone in narcotics transactions]?

THE DEFENDANT: *Yes, sir. He could do that, Your Honor. I would*

---

10. D.C.Code § 14–305 provides:

  *§ 14–305. Competency of witnesses; impeachment by evidence of conviction of crime*

  (a) No person is incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of a criminal offense.

  (b)(1) Except as provided in paragraph (2), for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if offered, either upon the cross-examination of the witness or by evidence aliunde, but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (B) involved dishonesty or false statement (regardless of punishment). A party establishing conviction by means of cross-examination shall not be bound by the witness' answers as to matters relating to the conviction.

  (2)(A) Evidence of a conviction of a witness is inadmissible under this section if—

  (i) the conviction has been the subject of a pardon, annulment, or other equivalent procedure granted or issued on the basis of innocence, or

  (ii) the conviction has been the subject of a certificate of rehabilitation or its equivalent and such witness has not been convicted of a subsequent criminal offense.

  (B) In addition, no evidence of any conviction of a witness is admissible under this section if a period of more than ten years has elapsed since the later of (i) the date of the release of the witness from confinement imposed for his most recent conviction of any criminal offense, or (ii) the expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction of any criminal offense.

  (c) For purposes of this section, to prove conviction of crime it is not necessary to produce the whole record of the proceedings containing the conviction, but the certificate, under seal, of the clerk of the court wherein the proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient.

  (d) The pendency of an appeal from a conviction does not render evidence of that conviction inadmissible under this section. Evidence of the pendency of such an appeal is admissible. (Dec. 23, 1963, 77 Stat. 519, Pub.L. 88–241, § 1, eff. Jan. 1, 1964; July 29, 1970, Pub.L. 91–358, § 133(a), title I, 84 Stat. 550.)

11. *See* Thomas v. United States, 74 App.D.C. 167, 169, 121 F.2d 905, 907 (1941); Crawford v. United States, 59 App.D.C. 356, 357, 41 F.2d 979, 980 (1930). *Cf.* United States v. Norris, 281 U.S. 619, 623, 50 S.Ct. 424, 74 L.Ed. 1076 (1930); United States v. Turner, 497 F.2d 406 (10th Cir. 1974); Dalton v. Hunter, 174 F.2d 633 (10th Cir. 1949); Lindsay v. United States, 134 F.2d 960 (10th Cir.), cert. denied, 319 U.S. 763, 63 S.Ct. 1316, 87 L.Ed. 1714 (1943).

*have no objection to that.* He could even speak of the gun charge that I was sentenced to a year on, which I have done ten months and five days of that at Lorton. I don't think there is anything else he can bring up.

Tr. 131 (emphasis added). Because appellant had consented to the introduction of the guilty plea—in fact he had suggested it—and because he did not object when the plea was introduced, we do not consider that the point is available to appellant on appeal.[12]

■ Appellant's status as a dealer in narcotics was relevant and competent to prove part of the offense upon which he was being tried.[13] Evidence of his other narcotics dealing was an appropriate means in this case of establishing the Government's theory that appellant had induced Wooley to commit the robbery in order to obtain additional narcotics and to pay for narcotics that he had previously purchased from appellant on credit.[14]

It has been repeatedly held that the rule [requiring the exclusion of evidence of other offenses] will not be given application to exclude evidence which may incidentally show arrest, incarceration or conviction for some other offense, but which has relevancy and competency otherwise, and which the trial court responsibly deems a

necessary or not inappropriate means in a particular situation in establishing some material fact or aspect of the prosecution's case.

Bram v. United States, 226 F.2d 858, 863 (8th Cir. 1955), citing Hardy v. United States, 199 F.2d 704, 707 (8th Cir. 1952).

The fact that appellant had *contemporaneously* entered a plea of guilty to other narcotics dealings was also corroborative of Wooley's testimony that appellant had sold him narcotics and thus tended to prove a part of the offense. We merely cite the admissibility of this evidence for this purpose to support our conclusion of harmless error.

■ Appellant also contends that the case should be reversed because the trial court failed to give an instruction cautioning the jury that the guilty plea was admitted solely for the limited purpose of attacking the credibility of appellant. We do not believe this to be a case that necessarily calls for applying our admonition in United States v. McClain [15] that an "immediate cautioning instruction" is required. The factors we have heretofore cited indicate that this evidence was not highly prejudicial to appellant. Moreover, appellant did not request such instruction notwithstanding that the court had earlier asked counsel to remind him to give a cautionary instruction when evidence was admitted concerning the narcotics dealings between Wooley

---

12. *Cf.* United States v. Mizzell, 146 U.S.App. D.C. 399, 452 F.2d 1328 (1971). It should also be noted that appellant was eventually convicted by a formal judgment and sentence.

13. In United States v. Fench, 152 U.S.App. D.C. 325, 470 F.2d 1234 (1972), cert. denied, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973), we stated:

> Although evidence of criminal conduct for which a defendant is not on trial, as well as evidence that falls short of provable criminal conduct, may not be admitted "to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged", it is well recognized that such evidence may be admitted for limited purposes if it is relevant to certain issues properly before the jury, *provided* that its probative value outweighs its prejudicial effect. Where the trial court

determines that the probative value of such evidence outweighs its possible prejudice, it "is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial."

152 U.S.App.D.C. at 330–331, 470 F.2d at 1239–1240 (footnotes omitted).

14. Bram v. United States, 226 F.2d 858 (8th Cir. 1955); Hardy v. United States, 199 F.2d 704 (8th Cir. 1952); United States v. Glory Blouse & Sportswear Co., 158 F.2d 880 (2d Cir. 1947).

15. 142 U.S.App.D.C. 213, 218, 440 F.2d 241, 246 (1971); *cf.* United States v. Mizzell, *supra* note 12, 146 U.S.App.D.C. at 401, 452 F.2d at 1330.

and appellant.[16] Finally, in its instructions to the jury the court did give a very fair charge with respect to the use of the prior conviction and the evidence concerning appellant's involvement with narcotics.[17]

For all these reasons we refuse to find that any of the arguments urged by appellant relative to the use of the guilty plea and the evidence of his narcotics activities amount to reversible error.

## IV

▇ The appeal also attacks the sufficiency of the evidence to support the guilty verdict against appellant on the charge of assaulting a police officer with a dangerous weapon. On this charge the testimony established that appellant was present at the scene of the robbery, that he was standing outside the front entrance of the motel near some bushes and a little below a wall (Tr. 42, 49, Exhibit 3), that he had told Wooley he was going to "cover" his back (Tr. 42), that appellant was in possession of a gun at the time (Tr. 42), that a shot was heard (Tr. 44, 45, 73) when the policeman was outside his car "between the automobile and the motel" (Tr. 80, 81), that Wooley saw appellant moments thereafter standing a little below the wall (Tr. 49) and that the shot had to come from the 4th Street direction (Tr. 81). Other testimony showed that the right front window of the police car was shattered (Tr. 76, Ex. 2, 7) by what looked like a bullet hole (Tr. 97, 89, Ex. 2, 7), that the car had not previously been damaged (Tr. 78) and that Wooley's gun had not been fired (Tr. 45, 94). The place where the gun was found negated any inference that it had fractured the car window when Wooley threw it away (Tr. 93). The location of appellant, the police officer, the patrol car and the other objects as marked on the sketch of the area (Ex. 3), when collated with the testimony as to the timing of the shot and the pictures of the shattered car window, indicate that a shot fired from the area near 4th Street where appellant was located and striking the window on the police car would have been aimed in the general direction where Police Officer Hawkins was standing at the time the shot was heard.

There was thus evidence from which a jury could conclude that a shot had been fired at the police officer from the general area where appellant was standing and that appellant had fired that shot. This conclusion is also consistent with his previously declared intention to "cover" Wooley's back during the robbery. His possession of the .45 caliber Army gun at the time gave him the means to accomplish what he stated to be his intent and what he was charged with doing, i. e.,

16. Tr. 15.

17. While the Defendant was on the stand, he was cross-examined by the Government with respect to two prior convictions. The Defendant's prior criminal convictions were admitted into evidence solely for your consideration in evaluating the credibility of the Defendant as a witness. In other words, in determining whether the Defendant was telling the truth when he testified at this trial. These prior convictions are not evidence of the Defendant's guilt of the offenses with which he is presently charged. You must not draw any inference of guilt against the Defendant because of these prior convictions. You may consider them only in connection with your evaluation of the credence to be given his present testimony in this Court.

In this case, while Mr. Wooley was on the stand, the Government elicited testimony concerning his original connection with Mr. Lee, and it developed, according to Mr. Wooley's testimony, that he came to Mr. Lee because of needing to purchase narcotics. We permitted that testimony in evidence in order to show the motivation for the original association of Mr. Wooley and the Defendant, Mr. Lee, and the possible motivation for the events concerning which Mr. Lee testified at the Down Town Motel.

Now the fact that Mr. Lee engaged in selling narcotics is a matter that has nothing to do with his guilt at this trial. He is not being tried for being a dope peddler. And, as I indicated before, we permitted Mr. Wooley to testify about it, not because of the fact that Mr. Lee is allegedly a dope peddler but merely to show the reasons, how Mr. Wooley, a soldier from Viet Nam, addicted with the drug habit, happened to get in touch, happened to associate with the Defendant, Mr. Lee.

Tr. 204–205.

assaulting a police officer while armed with a dangerous weapon.

We view the foregoing facts as being more than adequate to support the jury's verdict that appellant was guilty of assaulting a police officer while armed with a dangerous weapon; even if reasonable minds might differ as to the guilt of the accused, the decision would still be for the trier of facts.[18]

### V

The factual findings of the trial court on the motion for a new trial are supported by the evidence. The evidence does not support an allegation that the plea of guilty was used in contravention of any informal or formal agreement that was entered into with the government in connection with the prior narcotics offense.

■ For the foregoing reasons we affirm the convictions for armed robbery and assault on a police officer while armed with a dangerous weapon and vacate the conviction for assault with a dangerous weapon upon Harry Loss.

Judgment accordingly.

---

**18.** Joyce v. United States, 147 U.S.App.D.C. 128, 137, 454 F.2d 971, 980 (1971), cert. denied, 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972).