UNITED STATES of America

v.

Mamie L. JOHNSON, Appellant.

No. 75–1253.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 30, 1975.

Decided Jan. 7, 1976.

William C. Cramer, Washington, D. C., appointed by this Court, for appellant.

Hamilton P. Fox, III, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Charles E. Wagner, Asst. U. S. Attys., were on the brief for appellee.

Before TAMM and WILKEY, Circuit Judges, and LUMBARD,* Senior Circuit Judge for the Second Circuit.

## PER CURIAM:

Appellant was convicted of two counts of possession of narcotics and of carrying a pistol without a license. She was sentenced by the Honorable Oliver Gasch to a one-year concurrent term for each of the three counts. On appeal, appellant asserts that her convictions should be reversed on the grounds that the cross-examinations by the prosecutor which impeached appellant and her witness were improper and without factual or legal basis, because the testimony of a government expert was improperly admitted insofar as he expressed an opinion on an ultimate issue, and because the prosecutor made certain allegedly prejudicial remarks in his rebuttal closing argument. Finding no merit in appellant's arguments, we affirm.

Responding to a radio call reporting a "man with a gun," police officers, utilizing a flashlight as they mounted a dark staircase, confronted appellant. As the flashlight beam flashed across her midsection, the officers observed the butt of a pistol protruding from the waist-band of her slacks. She was placed under arrest and taken to a police station where a search, conducted by a woman police officer, disclosed appellant's possession of two wallets or purses, one containing 26

tinfoil packets of heroin and the other containing 35 tablets of Preludin or "pink bam." Appellant testified at trial that she had found these articles on the floor and had placed them on her person so that she might dispose of them.[1]

■ Respecting appellant's first contention, we note that appellant's witness McKinney had been called from jail to testify on only about one and one-half or two hours notice; hence the prosecutor was somewhat handicapped in his cross-examination, since he had been unable on such short notice to ascertain McKinney's date of birth and thus unable to check his criminal record. Defense counsel had responded, when asked, that he did not know of McKinney's convictions. The prosecutor then asked a deputy marshal to check McKinney's record for him. On the basis of this information, the prosecutor cross-examined McKinney,[2] asking him whether he had been convicted of robbery in 1969. McKinney replied that he had not. The prosecutor then asked him if he had ever been convicted of robbery, and McKinney replied that he had been convicted of robbery in 1961 and sentenced to serve six years under the Youth Corrections Act.

At the conclusion of this cross-examination, defense counsel asked for the foundation for the prosecutor's questions seeking to impeach McKinney's credibility with prior convictions. The prosecutor explained the situation, and said he would check during the luncheon recess (Tr. 105).

After the luncheon recess, the prosecutor informed the court that he had been unable to find evidence of a prior robbery conviction except for a 1951 conviction. McKinney had been charged with

---

\* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Four members of a family who lived on the first floor of the building testified that three men, one of whom had a pistol, were looking for a woman who had sold them some bad narcotics. A member of the family called the police. When the police arrived at the scene, the man with the pistol threw it behind a couch and walked out of the building. According to one witness, at least one of the men ran upstairs. The police also went upstairs and came back down with appellant under arrest (Tr. 110A–134).

2. The marshal informed the prosecutor that McKinney had five prior convictions: one in 1963 and one in 1964; a 1969 robbery conviction; a 1969 petit larceny conviction; and a conviction for carrying a pistol without a license, for which he was incarcerated at the time of appellant's trial (Tr. 103–04).

robbery in 1969, but had pleaded guilty to petit larceny. The court concluded that there was no reason to recall McKinney or to go into his convictions any further. Defense counsel made no objection, and the matter was not discussed further during the trial (Tr. 119). In its final instructions, the court instructed the jury on impeachment by prior convictions (Tr. 228).

Although the prosecutor erred in stating to the judge that McKinney had a 1951 robbery conviction, McKinney did in fact have a 1961 robbery conviction. Moreover, McKinney had testified that he had not been convicted after his 1961 conviction.[3] This claim was not true, since McKinney was charged with robbery in 1969 and pleaded guilty to petit larceny. Under these circumstances, we see no prejudice resulting from the prosecutor's confusion over the dates of McKinney's convictions. We find *United States v. Carter,* 157 U.S.App.D.C. 149, 482 F.2d 738 (1973), upon which appellant relies, inapposite insofar as that case concerned a prosecutor's impeachment of a defendant with a prior conviction in a manner designed to suggest to the jury that, if the defendant had committed one offense, he was likely to have committed another. In this case, the prosecutor sought to use McKinney's prior convictions solely for the legitimate purpose of impeaching his credibility.

■ We also find appellant's assertion that the prosecutor improperly cross-examined her concerning her own criminal record to be without merit. On direct examination, appellant testified that she had never been convicted of a drug offense.[4] On cross-examination, the prosecutor sought to demonstrate that this claim was false.[5] At this point, defense counsel interrupted and received permission to approach the bench, where he informed the court that appellant's recorded conviction for a Dangerous Drug Act violation was erroneous. As a result of this claim, the prosecutor agreed not to inquire further concerning the conviction. We see no impropriety in this cross-examination.

■ Appellant next contends that the expert testimony of a police detective concerning the habits of narcotics users and dealers amounted to an opinion as to an ultimate issue of the case and, hence, impermissibly invaded the province of the jury.[6]

3. McKinney stated:
> In 1961, I was convicted of robbery and spent six years under the Youth Correction Act. Since then, they never stopped me. (Tr. 103).

4. On direct, appellant testified as follows:
> Q. Let me ask you, have you ever been arrested before?
> A. Yes, I have been arrested.
> Q. Have you ever been convicted of possession of narcotics?
> A. No, never have had a drug charge. (Tr. 143–44).

5. The cross-examination proceeded as follows:
> Q. You testified on direct examination, you were never convicted of a narcotics offense, is that not correct, you have never been arrested for one?
> A. I said I was arrested in a raid, which they charged, I think, with implements of the crime, something like that, and that was on a Saturday.
> Q. Is that your only involvement with drugs as far as the law is concerned?

> A. Involvement with drugs as far as being arrested or something like that?
> Q. Yes?
> A. The arrest I had in 1969, I think it was, yes, 1969 for soliciting for prosecation [*sic*].
> Q. Soliciting for prostitution?
> A. That is right, I was convicted on that. Okay, this past year, I did a year's probation for uttering charge. They charged—first it was CSA, a prescription that was forged that I didn't forge. They broke it down to uttering. I got a year's probation on that. (Tr. 168–69).

6. In the testimony to which appellant objects, the prosecutor asked the detective:
> Q. In your opinion—well, do you have an opinion as to whether or not a person carrying that amount of drugs [*i. e.,* the amount found on appellant] on his or her person would be a user or seller of narcotics? Do you have an opinion?
> A. Well, with this quantity, I would say it was a dealer.
> Q. Why would you say that?

■ We find this argument frivolous for several reasons. First, the trial court has broad discretion to admit expert testimony which will aid the jury. *Jenkins v. United States,* 113 U.S.App.D.C. 300, 307, 307 F.2d 637, 644 (1962) (en banc). Secondly, the detective expressed an opinion as to the habits of narcotics dealers and users in general. He did not state any opinion as to whether appellant was a dealer. His statements in this regard did not in any way contradict appellant's explanation that she found the narcotics and merely intended to dispose of them. Finally, appellant was acquitted of possessing narcotics for distribution, and convicted solely for simple possession. For this reason, we would be inclined to find that the testimony had no harmful effect even if it were improperly admitted.

■ Appellant also contends that the prosecutor's rebuttal contained impermissible prejudicial comments[7] in an attempt to mislead the jury and "to arouse, anger and demand the jurors to convict because of prejudice for drug dealers and what they do to the citizens and their children in this city." Appellant's Br. at 15–16. We find none of the prosecutor's remarks improper. We do not find that these statements involved explicit appeals to current emotional issues; consequently, we find appellant's

reliance on *Viereck v. United States,* 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943), and *Brown v. United States,* 125 U.S.App.D.C. 220, 370 F.2d 242 (1966), inapposite. Appellant's counsel also appealed to the jury's sympathies, speaking of the unfortunate lives of ex-addicts. (Tr. S. 33) and of appellant's poverty (Tr. S. 34). We read the prosecutor's remarks as an admonishment to the jury to decide the case on the merits. The use of the words "conned" and "conjured" were not improper and did not constitute plain error under the circumstances, referring as they did to the defense counsel's attempt to invoke the jury's sympathy and last-minute production of Mr. McKinney as a defense witness. The prosecutor is permitted to act as an advocate, and, in assessing whether his remarks are impermissible, we need not easily leap to the conclusion that "a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelley v. De-Christoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974).

■ Finally, we agree with the trial court that the prosecutor was permitted to ask the jury to draw the inference that appellant had been the same narcot-

A. Because this amount—an addict could possibly use this amount in a certain period of time. But is not very often that an addict carries that much drug on him.
Q. Why is that?
A. Well, number one, the cost: An addict usually buys—if he has five dollars, he'll buy five dollars' worth. Number two, because the places where addicts frequent, they have a chance to be robbed and the drug would be taken from them.
(Tr. 80–81).

7. The excerpts complained of are as follows:
1. Two questions opposed [*sic*] from counsel's presentation to you: The first question concerns the defendant. The *second question concerns the present and future generations of citizens of Washington, D. C.* (Tr. 35) (emphasis added).

2. The second question, . . . whether a conscientious jury can be persuaded and *conned* into rendering a verdict of not guilty . . . (Tr. 36) (emphasis added).
3. . . . Mr. McKinney, the witness who the defense *conjured up* an hour and a half before trial started . . . (Tr. 37) (emphasis added).
4. Also, you heard Detective Bland say that this was a sufficient quantity to indicate distribution (Tr. 38).
5. Now, the three men came there looking for a woman who sold them some narcotics. Six defense witnesses testified, not one mentioned who the woman was. Did they tell you that the men were looking for . . . .? Who was on the second floor in the darkness? Miss Johnson. Who was carrying narcotics? Miss Johnson. (Tr. S. 39).

ics dealer who had sold drugs to three men about whom various defense witnesses had testified earlier (Tr. S. 42–43). The jury was properly instructed that counsel's statements were not evidence (Tr. 223) and that the jury's recollection of the evidence was controlling (Tr. 222).

In closing, we believe that the government's case against appellant was overwhelming. The convictions were based solely on illegal possession of the drugs and pistol, not on possession for distribution. For the reasons stated herein, we find no merit in appellant's claims; accordingly, we affirm the verdict of the trial court.

Affirmed.