Aaron OLIVER, Appellant,

v.

UNITED STATES, Appellee.

No. 11913.

District of Columbia Court of Appeals.

Submitted Jan. 11, 1978.

Decided March 23, 1978.

Elkanah J. Burns, Jr., Washington, D. C., was on the brief for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Timothy J. Reardon, III, and E. Thomas Roberts, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KERN and MACK, Associate Judges.

NEWMAN, Chief Judge:

Convicted by a jury of armed robbery, appellant seeks reversal on the ground that the trial court allowed him to be impeached on cross-examination with a prior felony conviction which he contends was obtained in violation of his Sixth Amendment right to counsel. We affirm.

Shortly after 12:30 a. m. on August 29, 1976, appellant and two other men approached the complainant, who was manning the attendant's booth of a hospital parking lot. While his companions blocked the exits from the booth, appellant, at knife-point, ordered the complainant to get down on his hands and knees. One of the men scooped out the contents of the cash drawer while appellant searched the victim's pockets. The three men then fled on foot.

Seconds later, a passer-by drove up in a jeep. Informed of the robbery, he and the complainant drove after the three running men, all of whom were still in sight. They quickly caught up with appellant, who had fallen behind his companions and was attempting to make his escape over a fence. They apprehended the appellant and returned him to the hospital where the police placed him under arrest.

At trial, the government's case consisted largely of the testimony of the complainant and the passer-by, and their in-court identification of appellant. Appellant took the stand as the only defense witness and denied any complicity in the offense charged. He testified that he was in the vicinity of the parking lot by chance and was therefore mistakenly apprehended.

At the conclusion of appellant's direct examination, defense counsel approached the bench, and informed the court of his expectation that the government would impeach appellant with a 1964 Alabama conviction for assault with intent to kill. Counsel argued that because appellant had not been provided an attorney in the Alabama proceeding, the conviction was defective under the Sixth Amendment and thus could not be used to impeach. He voiced objection to the government's use of the conviction unless the government could establish that the conviction was consistent with the Sixth Amendment. The government proffered that it was without certified records pertaining to this conviction, for although they had been requested from Alabama, they still had not been received. The trial court overruled the objection, noting its uncertainty as to whether a previously unchallenged conviction could be barred from use at trial.

On cross-examination, the prosecutor questioned appellant about his previous convictions. Appellant acknowledged the Alabama assault conviction here at issue, as well as a 1974 District of Columbia conviction for uttering.[1] In his closing argument, the prosecutor reemphasized appellant's prior convictions by referring to him as a "convicted felon."

Sometime after appellant's trial had concluded, the government received a certified

---

1. The validity of the uttering conviction is uncontested.

copy of the assault conviction from the Alabama Court.[2] The document, a trial docket sheet, shows that the appellant was unrepresented by an attorney when, on October 30, 1964, he entered a plea of guilty to a charge of assault with intent to kill. The document also states that prior to being arraigned appellant was asked the following questions:

Have you employed counsel to represent you in this case?

Are you financially able to employ counsel to represent you?

Do you want the Court to appoint counsel to represent you?

After each question, a negative answer is written.

Appellant correctly states that a prior conviction obtained in violation of the Sixth Amendment right to counsel as explicated in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), may not be used to impeach a defendant's credibility in a subsequent criminal proceeding. *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). To permit such use of uncounselled convictions would erode the principle of *Gideon* and result in a situation where the defendant "suffers anew from the deprivation of that Sixth Amendment right." *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967). Where, however, a defendant has validly waived his right to counsel, *see Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), a conviction resulting therefrom may properly be used for impeachment purposes if the defendant is later tried on another charge. *See Loper, supra,* 405 U.S. at 483 n.12, 92 S.Ct. 1014.

The government concedes that appellant's Alabama conviction was procured without counsel. However, it claims that the conviction followed a valid waiver of counsel and thus was admissible against him in the proceeding below. In so arguing, the government relies solely on the Alabama docket sheet indicating that appellant declined an offer to have counsel appointed to represent him.

On this appeal, the government may not properly rely on the Alabama record since it was not in evidence in the trial court during appellant's trial. The Alabama conviction was known to the government and the trial court only as a result of information contained in the Bail Agency report. Such record, of course, contained nothing on the issue of the presence of or waiver of counsel during the Alabama proceedings. Since a waiver of counsel cannot be presumed from an official court docket which is silent on that question, *Carnley v. Cochran,* 369 U.S. 506, 512, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), perforce such a waiver may not be presumed where total knowledge of the conviction is derived from a less formal source. Thus, when appellant challenged the validity of the Alabama conviction on "counsel" grounds, it was incumbent on the trial court to conduct an evidentiary hearing to determine the validity of appellant's claim that the Alabama conviction was constitutionally infirm. *Rice v. Olson,* 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Potts v. Estelle,* 529 F.2d 450 (5th Cir. 1976). There having been no proper and timely determination that the Alabama conviction was valid under the Sixth Amendment, we hold that the trial court committed error in permitting its introduction into evidence in the face of appellant's challenge to its validity.

After the decision in *Burgett v. Texas, supra,* doubt existed whether the error here committed could ever be held to be harmless. This doubt, however, was allayed by a subsequent decision of the Supreme Court. In *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), Tucker collaterally challenged his conviction on the ground that two of the three felony convictions used to impeach him had been obtained in derogation of his right to counsel. The Supreme Court left undisturbed the

---

**2.** Records received from the Marengo County Circuit Court were first introduced at appellant's sentencing on February 3, 1977.

holding of the Court of Appeals for the Ninth Circuit that the erroneous use of the constitutionally infirm convictions for impeachment was harmless error beyond a reasonable doubt under the test of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also Thomas v. Savage*, 513 F.2d 536, 538–39 (5th Cir. 1975), *cert. denied*, 424 U.S. 924, 96 S.Ct. 1135, 47 L.Ed.2d 333 (1976), *and cases compiled therein*. Therefore, we evaluate appellant's contentions under the *Chapman* test, *i. e.*, whether we can say beyond a reasonable doubt that there is no reasonable possibility that the impeachment of the appellant with the Alabama conviction contributed to this conviction. Given the overwhelming weight of the government's evidence, coupled with the proper impeachment of the appellant with a prior conviction of uttering, we are satisfied that the error was harmless beyond a reasonable doubt. *Chapman, supra.*[3]

The issue presented in this case—the procedure to be followed when a defendant challenges the validity under *Gideon* of a prior conviction sought to be used by the government to impeach his credibility—is a recurring one in the trial court. Thus, in the exercise of our supervisory jurisdiction, *In re D.M.R.*, D.C.App., 373 A.2d 235 (1977), we take this opportunity to set forth certain guidelines to assist the trial court in properly resolving such questions in the future.

Where a defendant raises a *Gideon* challenge to a prior conviction which the government desires to use to impeach his credibility, the burden of establishing the validity of such conviction is upon the government. *See Potts v. Estelle, supra*. Ordinarily, the government will be able to establish a *prima facie* case of constitutional validity by the introduction of transcript or other official court records reflecting the presence of counsel or valid waiver thereof. *See Losieau v. Sigler*, 406 F.2d 795 (8th Cir.), *cert. denied*, 396 U.S. 988, 90 S.Ct. 475, 24 L.Ed.2d 452 (1969). *Cf. Johnson v. State*, 9 Md.App. 166, 263 A.2d 232 (1970). Once the government has so established a *prima facie* case, the burden of going forward passes to the defendant who may then present evidence on the issue. Based on all the evidence presented, the trial court must determine whether, by a preponderance of the evidence, *see Johnson v. Zerbst, supra*, the government has established the constitutional validity of the prior conviction. Where the government cannot produce a transcript or other official court record reflecting presence of counsel or valid waiver thereof, it must establish this fact by other credible evidence, if it can. The burden of going forward with evidence and the burden of persuasion rests upon the government.

*Affirmed.*

---

3. At sentencing, the trial court expressly stated that it would not consider the challenged Alabama conviction in determining the appropriate sentence to impose. Thus, it is understandable that no issue with respect to sentencing is raised on this appeal.