**Wade A. LANGLEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 84–1092.**

District of Columbia Court of Appeals.

Argued July 9, 1986.

Decided Oct. 7, 1986.

---

J. Philip Kessel, Washington, D.C., for appellant.

Daniel S. Seikaly, Asst. U.S. Atty., with whom Joseph E. DiGenova, U.S. Atty., and Michael W. Farrell and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and FER-REN and BELSON, Associate Judges.

FERREN, Associate Judge:

Appellant challenges his convictions on two counts each of kidnapping, D.C.Code § 22–2101 (1981), assault with intent to commit rape, id. § 22–501, and simple assault, id. § 22–504.[1] He claims the evidence was insufficient to support his conviction for assault with intent to commit rape. He also maintains the trial court erred in denying his request for an instruction on simple assault as a lesser-included offense of assault with intent to commit rape. Finally, appellant contends the trial court erred when it ruled, in limine, that even though appellant had not been sentenced for two felonies of which a jury recently had found him guilty, D.C.Code § 14–305 (1981) authorized the government to impeach him with evidence of guilty verdicts which had not yet been reduced to final judgments of conviction. It is uncontested that, as a consequence, appellant declined to testify. We conclude the evidence of the assaults with intent to commit rape was sufficient for conviction, but we reverse and remand for a new trial because we agree with appellant on the impeachment issue. In view of our disposition, we need not address appellant's lesser-included-offense argument.

## I.

The government's evidence showed that on June 23, 1982, appellant and his two co-defendants, Miles and West, abducted the two complainants on Martin Luther King Avenue, S.E. The complainants had been waiting to cross the street when a car pulled up next to them and the driver asked one of the women for a match. When she tried to pass a book of matches through the front passenger window, the driver, Miles, told her it was broken. He opened the front door on the passenger side.

As this first complainant was waiting for return of the matches, she noticed that a fight had broken out nearby. While distracted, she reached into the car to retrieve the matches, but she was pulled into the front seat. The car sped off. The complainant begged to be let out, to no avail. As the car turned a corner sharply, she was thrown against Miles, who was still holding her arm. She then saw that the second complainant was in the back seat, held down by West, one of two men sitting there.

As the car sped down Interstate 295, the first complainant pleaded with Miles to let them out. At one point, Miles pulled over to the side of the road as if to comply, but when West shouted, "No, Roland," Miles sped up again. West said repeatedly to both women that they "were going to fuck" and began beating the second com-

---

1. The court sentenced appellant to concurrent prison terms of three to ten years for each count of kidnapping and of assault with intent to commit rape and of twelve months for each count of simple assault, all sentences to run consecutively to any other being served.

plainant with his fists because the women refused.

Appellant was the other man in the back seat. He began pulling the second complainant's pants down. She recalled that West got angrier as she fought back and claimed "that he was gonna fuck me or he was gonna kill me." West hit her in the face with a liquor bottle. The first complainant then heard West ask appellant for a gun, followed by the second complainant's saying, "Oh, God, he['s] got a gun." West then hit the second complainant with the gun. Immediately thereafter, appellant reached over the front seat and began pulling off the first complainant's clothes. He succeeded in tearing off her blouse and bra and was trying to pull off her pants when she began hitting him and Miles.

By this time, Miles had taken the Benning Road exit off 1–295, made another turn, and driven a short distance. West continued to beat the second complainant, who continued to resist until he pushed her out of the moving car. A half block later, Miles made a quick turn, and the front passenger door flew open. Working together, appellant and Miles pushed the first complainant out of the moving car. When she hit the ground, she saw the car back up as if the driver were trying to run her over. She rolled out of the way and ran toward a nearby apartment building for help.

The first complainant sought help from a man on the second floor landing of the building, Bobby Davis, who gave her his shirt. She then saw her abductors' car come down the street and identified it to Davis and others who had come out of the building. Moments later, a police car arrived with the second complainant. Her clothes were torn, and she was bleeding from her face, arms, and hands. As the first complainant began describing her abduction to the police, she heard Davis say, "That look[s] like the car." The police acted promptly and apprehended the three men. The first complainant identified all three at a showup conducted at the scene,

while the second complainant identified Miles as the driver.

A crime scene search officer processed the car for evidence. He testified that he had found a white bra strap on the front passenger seat, a white blouse on the right rear seat, and a laminated identification card belonging to the first complainant.

Appellant did not present any evidence. He relied instead on the testimony of his co-defendants, who claimed that the two women had entered the car voluntarily and had jumped out only after West noticed that money was missing from his pocket.

## II.

Appellant claims that the evidence was insufficient as a matter of law to support his convictions for assault with intent to commit rape. Specifically, he argues that there was "no evidence on which the jury could have concluded beyond a reasonable doubt that either [appellant] or his co-defendants possessed the ... state of mind required for conviction."

In evaluating a claim of insufficiency, we review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *Hall v. United States*, 454 A.2d 314, 317 (D.C.1982); *Curley v. United States*, 81 U.S. App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). We may reverse only when the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt. *Frendak v. United States*, 408 A.2d 364, 371 (D.C.1979).

To sustain appellant's convictions for assault with intent to commit rape, the evidence must permit a reasonable person to find beyond a reasonable doubt that appellant (1) assaulted the two complainants, (2) did so with the specific intent to have sexual intercourse with them, and (3) intended to achieve penetration of their sexual organs against their will "by using such force or threat of force as might be neces-

sary to overcome resistance or make further resistance useless." *United States v. Bryant*, 137 U.S.App.D.C. 124, 133, 420 F.2d 1327, 1336 (1969); Criminal Jury Instructions for the District of Columbia, No. 4.75 (3d ed. 1978). The necessary element of intent need not be proved directly "but may be inferred from the totality of the circumstances presented to the jury." *United States v. Jackson*, 183 U.S.App. D.C. 270, 273, 562 F.2d 789, 792 (1977); *Higgins v. United States*, 130 U.S.App. D.C. 331, 332, 401 F.2d 396, 397 (1968).

■ The evidence established that the women were forcibly abducted by appellant and his co-defendants and driven from Martin Luther King Avenue, S.E., to the area of 26th and Eye Streets, N.E. The first complainant testified that, as Miles was driving down I–295, West "was saying that we were going to fuck. He just kept saying over and over, and we were saying, no, we weren't." At about the time Miles turned off I–295 onto Benning Road, appellant reached over the front seat and began tearing at the first complainant's clothes. He succeeded in tearing off her blouse and bra and was attempting to take her pants off just before appellant and Miles pushed her out of the car.

Similarly, the second complainant testified that, from the moment she had been dragged into the back seat of the car, appellant and West held her there. Angered by her resistance, West began to beat her, first with his fists, then with a bottle, and finally with a gun. At about the time West told her "he was gonna fuck me or he was gonna kill me," appellant "was trying to pull my pants down, but I kept kicking him."

From this testimony and the corroborating physical evidence—bleeding, torn clothes, and clothing recovered from the car—the jury easily could have found that appellant's assaults were committed with the specific intent that he, or West (whom appellant aided and abetted), or both, have intercourse with the two women against their will, using whatever force was necessary to accomplish it despite their resistance. *Bryant*, 137 U.S.App.D.C. at 133, 420 F.2d at 1336.

Appellant argues to the contrary, citing *Bryant, id.* at 131–32, 420 F.2d at 1334–35. He asserts the only reasonable inference from the evidence is that he and his cohorts had abandoned their effort to rape—that they manifestly had not intended to use the force necessary to accomplish that purpose because, when they encountered resistance, they pushed the complainants out of the car. Specifically, appellant claims in his brief that the third element of the crime was not established because the evidence showed, at most, "that the complaining witnesses were assaulted inside the car and that the initial motivation of this behavior was to obtain their consent to sexual intercourse with the men. In light of the resistance encountered, however, any original intention to have sexual intercourse was, in fact, abandoned without any outside interference." We disagree.

In the portion of *Bryant* on which appellant relies, the court stated there is no intent to commit rape "[w]hen a defendant intends to use the kind of 'force' that is enough in his mind to test the existence or persistence of a complainant's true intentions, but not enough to achieve sexual intercourse if she 'really' rejects him." *Id.* at 131, 420 F.2d at 1334. But this is not to say that, if an assailant fails to commit rape because the victim's resistance is especially fierce, his abandonment manifests a lack of intent forcefully to accomplish that purpose. The assailant's failure may merely mean that the victim's ability to fend off attack was superior to the assailant's ability to accomplish his objective. On the evidence here, the jury, which was properly instructed, reasonably could have found that appellant and his co-defendants manifestly intended rape—as evidenced by their accelerating attacks on the complainants—but that the complainants were simply too much for them. The jury need not have inferred that appellant and the others were simply testing the complainants'

"true intentions," *id.*, and ceased their attacks only because the complainants rejected the overtures.

## III.

Appellant also argues that the trial court erred in ruling on his motion *in limine* that, if he testified, the government could impeach him with evidence that a jury had found him guilty of two felonies for which he had not yet been sentenced. This was prejudicial error, he says, for as a consequence of that ruling he decided not to testify. The government responds, initially, that under the principle announced in *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), appellant's failure to testify precludes our reviewing this issue on appeal. The government also asserts that, in any event, the court's ruling was proper.

## A.

On February 11, 1984, a jury found appellant guilty on two counts of rape and one count of assault with intent to commit sodomy in Criminal No. F 3666–82. He was not sentenced until April 13, 1984.[2] On March 29, 1984, the trial court in the present case heard argument on the question whether, if appellant testified at trial, the government could use the jury verdicts in the earlier case to impeach his credibility. The trial court then ruled that the government could ask appellant if he had been convicted of felony offenses in Superior Court on February 11, 1984, but could not elicit the nature of those offenses. Some time later, defense counsel announced that, because of the court's ruling, appellant would not testify.

**2.** This conviction is currently on appeal to this court. *Langley v. United States,* No. 84–467.

**3.** The majority in *Robinson v. United States,* 513 A.2d 218 (D.C.1986) did not reach this issue. It "decide[d] the case on the merits without reference to *Luce.*" *Id.* at 221 n. 7.

## B.

In *Luce,* the Supreme Court held that, in order "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." 469 U.S. at 43, 105 S.Ct. at 464. The Court decided *Luce* after appellant's trial. Even if *Luce* were otherwise applicable— an issue we do not address—we conclude that *Luce* would only apply prospectively. We adopt the reasoning of *Robinson v. United States,* 513 A.2d 218, 222, 223–24 (D.C.1986) (Ferren, J., dissenting).[3]

Accordingly, since no one questions that appellant declined to testify because of the court's ruling, he may challenge that ruling on appeal under the law of this jurisdiction at the time he presented his motion. *Johns v. United States,* 434 A.2d 463, 467–68 (D.C.1981); *United States v. Lipscomb,* 226 U.S.App.D.C. 312, 332–33, 702 F.2d 1049, 1069–70 (1983).

## C.

In this jurisdiction, the courts have understood, by reference to the statutory language, that a "conviction" for purposes of a sequence of impeachment statutes has meant a judgment of conviction based on a sentence. *Godfrey v. United States,* 454 A.2d 293, 305 (D.C.1982); *United States v. Lee,* 166 U.S.App.D.C. 67, 72, 509 F.2d 400, 405 (1974), *cert. denied,* 420 U.S. 1006, 95 S.Ct. 1451, 43 L.Ed.2d 765 (1975); *Thomas v. United States,* 74 U.S.App.D.C. 167, 169, 121 F.2d 905, 907 (1941); *Crawford v. United States,* 59 U.S.App.D.C. 356, 357, 41 F.2d 979, 980 (1930). Because this interpretation has been expressed in dicta, however, there is still a question whether imposition of sentence is an absolute prerequisite to the meaning of "conviction" for impeachment purposes under D.C.Code § 14–305 (1981).[4]

**4.** D.C.Code § 14–305(b)(1) (1981) provides in part:

> [F]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if offered, either upon the cross-examination of the witness or by evidence ali-

In *Godfrey*, we held that a guilty plea is not a "conviction" for impeachment purposes. It "lacks the trustworthiness and finality of a conviction" because, "before sentencing, it may be withdrawn for any reason that is 'fair and just.'" 454 A.2d at 305 & n. 36 (citations omitted). We expressly left open, however, the question whether, for impeachment purposes, "to treat a jury verdict of guilty in the same way that we treat a plea of guilty." *Id.* at 305 n. 37.

■ That question is squarely presented here. We hold that, under D.C.Code § 14–305 (1981), a defendant (or any other witness) may not be impeached with a prior guilty verdict unless and until there is a judgment of conviction premised on a sentence. We so hold because this interpretation reflects the meaning of the statutory language as the courts of this jurisdiction have understood it for years.[5] That understanding is premised on the traditional view that a final, appealable judgment of conviction means the sentence. *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 165, 82 L.Ed. 204 (1937); *McDonald v. United States*, 415 A.2d 538, 541 (D.C. 1980); *Butler v. United States*, 379 A.2d 948, 949 (D.C.1977); *Thomas v. United States*, 129 A.2d 852, 853 (D.C.Mun.App. 1957); *see* D.C.App.R. 4(b)(1). Indeed, the impeachment statute itself strongly implies that the legislature had this traditional definition of conviction in mind, for § 14–305(d) provides in part: "The pendency of an appeal from a conviction does not render evidence of that conviction inadmissible under this section." There can be no appeal from a "conviction" absent a judgment based on a sentence. D.C.App.R. 4(b)(1).[6]

We recognize that several of the federal circuit courts of appeal have permitted impeachment with jury verdicts, before sentencing, under Fed.R.Evid. 609, provided the jury is told that "judgment has not been entered" and is informed about "the pendency of motions for acquittal and for a new trial before the sentencing court." *United States v. Vanderbosch*, 610 F.2d 95, 97 (2d Cir.1979); *accord United States v. Smith*, 623 F.2d 627, 630–31 (9th Cir. 1980); *United States v. Duncan*, 598 F.2d 839, 864–65 (4th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); *United States v. Klein*, 560 F.2d 1236, 1239–41 (5th Cir.1977), *cert. denied*, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978); *United States v. Rose*, 526 F.2d 745, 747 (8th Cir.1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976).

There are, however, significant differences between federal court administration of Rule 609 and the Superior Court's application of D.C.Code § 14–305 (1981). Under Rule 609 (a) (1), applied in the cases cited above, the district court has discretion to

---

unde, but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law under which he [or she] was convicted, or (B) involved dishonesty or false statement (regardless of punishment).

**5.** The trial court apparently was aware of this traditional understanding, for it obviously sought to work a compromise by permitting impeachment by reference to guilty verdicts in a felony case without allowing reference to the nature of the crimes themselves, which otherwise would be permitted under § 14–305. *See, e.g., Dorman v. United States*, 491 A.2d 455 (D.C. 1984) (en banc); *Baptist v. United States*, 466 A.2d 452 (D.C.1983).

**6.** Our recent decision in *Stewart v. United States*, 490 A.2d 619, 625–26 (D.C.1985), adopting the reasoning of *United States v. Hinkle*, 160 U.S.App.D.C. 394, 492 F.2d 660 (1974), was predicated on our understanding that a "conviction" under D.C.Code § 14–305 (1981) presupposes a sentence. After noting that application of the Youth Corrections Act, 18 U.S.C. §§ 5005–5026, *repealed*, Pub.L. No. 98–473, Title II, § 218(a)(8), Oct. 18, 1984, did not neatly correspond to the sentencing scheme in the usual criminal case, we concluded that interim confinement for a study under § 5010(e) of the Act met the sentencing requirement for an impeachable "conviction" under § 14–305. Such confinement "has been deemed so interconnected with the final Youth Corrections Act sentence, that the time served during the interim confinement counts as time spent under the final sentence for purposes of computing an offender's maximum sentence." *Stewart*, 490 A.2d at 626 (citations omitted).

permit or forbid impeachment with prior felony convictions after weighing probative value to the government against prejudicial impact on the defendant.[7] Thus, these Rule 609 decisions stand for the proposition that the trial court has not abused its discretion in concluding—under the circumstances of a particular case—that the probative, impeachment value of the guilty verdict outweighed the prejudice to the defendant. Implicit in each discretionary ruling is a finding that, under the circumstances, disclosure of the incomplete status of the conviction to the jury would sufficiently mitigate the prejudice attributable to impeachment with a verdict on which judgment has not been entered.

In contrast, under § 14–305 the trial court has no discretion to preclude the use of prior convictions for impeachment, including reference to the nature of the crimes, *supra* note 5, even though in a particular case the prejudicial impact on the party they are used against may outweigh the probative value to the party who elicits them. *Dorman v. United States,* 491 A.2d 455, 458 (D.C.1984) (en banc); *Hill v. United States,* 434 A.2d 422, 428–29 (D.C.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982).[8] Such

evidence "shall be admitted," § 14–305, *supra* note 4, if it meets the statutory criteria (prior felony or offense involving dishonesty or false statement).[9]

Impeachment with prior convictions can be devastating to the party who calls the witness, to a point that some defendants, like appellant, may elect not to testify because of the anticipated impact of such impeachment on the jury. Such "other crimes" evidence inevitably implies legally irrelevant criminal propensity, whatever limiting instruction the court gives to confine the jury's consideration to impeachment. Accordingly, because the legislature has not granted the trial court flexibility to regulate this form of impeachment, we do not believe this court should be influenced by cases under federal Rule 609 to modify the traditional understanding of what a "conviction" for impeachment purposes means in this jurisdiction, absent a showing (and there is none) that a verdict is tantamount to a judgment and sentence.[10]

*Reversed and remanded.*

---

7. In contrast with trial court discretion over admission of prior felony convictions for impeachment pursuant to Fed.R.Evid. 609(a)(1), Rule 609(a)(2) mandates impeachment with prior convictions for crimes "involv[ing] dishonesty or false statement, regardless of the punishment"; the trial court has no discretion to weigh probative value against prejudicial effect to the defendant when the prior convictions, for example, are for perjury, criminal fraud, embezzlement, or false pretenses. *E.g., United States v. Kuecker,* 740 F.2d 496, 501–02 (7th Cir.1984); *United States v. Wong,* 703 F.2d 65, 67–68 (3rd Cir.) (per curiam), *cert. denied,* 464 U.S. 842, 104 S.Ct. 140, 78 L.Ed.2d 132 (1983).

8. Although Fed.R.Evid. 609(a)(2) does not give the trial court discretion to preclude impeachment with prior convictions involving dishonesty or false statement, *supra* note 7, most convictions used for impeachment fall under the general felony category, where the court does have this discretion. Thus, the difference between the federal and District of Columbia approaches is significant.

9. The compromise fashioned by the trial court, *supra* note 5, was in derogation of this statutory

mandate. Either appellant's earlier guilty verdict is a conviction under § 14–305 or it is not; if it is, the trial court had no discretion to withhold the nature of appellant's earlier crimes from the jury.

10. A jury verdict, like a guilty plea, is more vulnerable to attack before the imposition of sentence than after. Before sentence, a defendant may move, pursuant to Super.Ct.Crim.R. 33, for a new trial based upon "the interest of justice." The trial judge has discretion to set aside a verdict of guilty if it is deemed "contrary to the weight of the evidence." *Forbes v. United States,* 390 A.2d 453, 459 (D.C.1978); *United States v. Robinson,* 71 F.Supp. 9, 10–11 (D.D.C. 1947) (construing federal counterpart of Rule 33). After sentence, however, when the judgment of conviction is appealed, this court must view the evidence in the light most favorable to the government and can reverse for insufficient evidence only if no reasonable mind might infer guilt beyond a reasonable doubt. *Frendak v. United States,* 408 A.2d 364, 370–71 (D.C.1979).