Charles M. HINNANT, Appellant,

v.

UNITED STATES, Appellee.

No. 85–1157.

District of Columbia Court of Appeals.

Submitted Oct. 28, 1986.
Decided Jan. 22, 1987.

Frederick J. Sullivan, Bowie, Md., appointed by this court, was on the brief for appellant.

Joseph E. diGenova, U.S. Atty. and Michael W. Farrell, Roxane N. Sokolove, and Kenneth D. Bynum, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before NEWMAN, TERRY, and ROGERS, Associate Judges.

TERRY, Associate Judge:

After a jury trial, appellant was convicted of possession of heroin with intent to distribute it, carrying a pistol without a license, possession of an unregistered firearm, and possession of unregistered ammunition.[1] Appellant contends that the trial court erred in admitting expert testimony on heroin dealing, in denying his motion for judgment of acquittal, and in giving a missing witness instruction. We find no reversible error and affirm all four convictions.

I

Appellant was arrested after a police officer saw him place a revolver in the waistband of his trousers. The arresting officer seized from him a fully loaded revolver, two plastic packets of heroin, and $287.00 in small bills. One of the packets contained 2260 milligrams of heroin that was thirty-four percent pure; the other contained 460 milligrams of heroin that was seven percent pure.

A narcotics detective, Lawrence Coates, accepted by the court as an expert, testified to the significance of the quantity of heroin and the method of its packaging. He said that 2260 milligrams of heroin of such a high degree of purity as thirty-four percent would far exceed a usable amount.

Heroin sold on the street, he said, was usually two to three percent pure. Sometimes it was as strong as seven percent, but "when you get over that, you are talking about overdosing." Thus the heroin in the larger bag would have to be greatly diluted before it could be used. Reduced to the typical street strength of two to three percent, it would yield sixty to seventy bags of heroin, which could be sold at $40 per bag. The smaller packet seized from appellant, Coates testified, could also have been sold for $40 on the street. Finally, Detective Coates stated that the possession of a large sum of money, together with "thirty-four percent pure heroin plus one street bag that is ready to go ... infers to me that you are selling dope." A drug seller in such circumstances would be likely to carry a gun to avoid being robbed of "something that you stand to make two to three thousand dollars off of...."

Appellant, the only defense witness, testified that his employer had given him $865.00 in cash and instructed him to pay specified amounts as wages to three co-workers; the remainder after these payments were made, $268.00, was his own wages. The employer and the co-workers were not called as witnesses, so the court gave the jury a missing witness instruction.

II

Appellant first contends that the court erred in permitting an expert to testify to the ultimate issue of intent to distribute. The trial court has broad discretion to admit or exclude expert testimony, and its decision either way will not be disturbed on appeal unless it is manifestly erroneous. *E.g., Ibn-Tamas v. United States*, 407 A.2d 626, 632 (D.C.1979); *Douglas v. United States*, 386 A.2d 289, 295 (D.C.1978). Because the use, sale, and packaging of heroin on the streets are not matters within the ken of the average lay person, expert testimony on the *modus operandi* of drug traffickers may be admitted if relevant.

1. D.C.Code §§ 33–541(a)(1) (1986 Supp.), 22– 3204, 6–2311(a), and 6–2361 (1981), respectively.

*See Harris v. United States,* 489 A.2d 464 (D.C.1985). It was clearly relevant in this case. We find no abuse of discretion.[2]

■ Next, appellant claims that there was insufficient evidence for the jury to find that he possessed the heroin with the intent to distribute it. Although a finding of intent to distribute cannot usually be based on possession alone, *United States v. Valdovinos,* 558 F.2d 531, 535 (9th Cir. 1977), in this case there was other evidence showing such an intent. The expert testified that the heroin seized would yield sixty to seventy packets, an amount which a reasonable trier of fact could readily find was inconsistent with appellant's own personal use. *Shorter v. United States,* 506 A.2d 1133, 1135 (D.C.1986). The expert further testified that the purity and method of packaging indicated that the heroin was for street sale. *United States v. Castellanos,* 235 U.S.App.D.C. 277, 283, 731 F.2d 979, 985 (1984); *United States v. Gooding,* 695 F.2d 78, 84 (4th Cir.1982). The evidence also showed that appellant possessed the heroin in an area known for a high incidence of drug trafficking. *See United States v. Raper,* 219 U.S.App.D.C. 243, 247, 676 F.2d 841, 845 (1982). The fact that appellant had a gun and $287.00 in small bills in his possession when he was arrested also supports a finding of intent to distribute. Viewing the evidence in the light most favorable to the government, as we must,[3] we find it more than sufficient to prove an intent to distribute beyond a reasonable doubt. The court committed no error in denying appellant's motion for judgment of acquittal.

### III

Finally, appellant contends that because the testimony of the four missing witness-es would have been irrelevant to the issue of whether he intended to distribute heroin, the court erred in giving a missing witness instruction. We agree that the instruction was erroneously given, but not for the reason advanced by appellant. We further conclude that the trial court's error was harmless in light of the government's strong evidence.

■ There are two prerequisites to the giving of a missing witness instruction. First, the witness' testimony must be likely to elucidate the transaction at issue. Second, the absent witness must be peculiarly available to the party against whom the adverse inference is sought to be drawn. *Miles v. United States,* 483 A.2d 649, 657 (D.C.1984) (citing cases). In this case the origin of the cash seized from appellant, as the trial court recognized, was probative on the issue of whether the money was the illegal proceeds from drug sales. This was not a peripheral matter, and the four missing witnesses could have shed some light on the issue; thus the first requirement was met. *See Harris v. United States,* 430 A.2d 536, 543 (D.C.1981); *Cooper v. United States,* 415 A.2d 528, 534 (D.C.1980). But the second was not. The record shows that although the witnesses were available to appellant, they were not *peculiarly* available.

Appellant testified on cross-examination that he could contact his employer either at work or at home, and that he also knew how to reach his three co-workers. Identifying all four men by name, he gave precise addresses for three of them[4] and the name of the street on which the fourth man lived. When defense counsel objected to the prosecutor's further questions about these potential witnesses, the court ruled

---

**2.** Detective Coates did not testify on the "ultimate issue," as appellant mistakenly believes. He did not say that in his opinion appellant was a drug dealer or that he intended to distribute drugs. Rather, in answer to a hypothetical question, he said that he would infer from all the facts in the hypothetical that drugs were being sold by a person arrested under those circumstances. *See United States v. Johnson,*

174 U.S.App.D.C. 72, 75, 527 F.2d 1381, 1384 (1976).

**3.** *E.g., Byrd v. United States,* 388 A.2d 1225, 1229 (D.C.1978).

**4.** Two of the men were brothers and lived at the same address.

that their testimony would be relevant and tentatively agreed to give a missing witness instruction. At the close of the defense case, the prosecutor asked the court for an opportunity to try to locate the four men whom appellant had named. Defense counsel, asserting (incorrectly) that their testimony would not be relevant, said, "I don't really care whether these people come in or not." The court then said it would give a missing witness instruction. The next morning, when the trial resumed, no mention was made of the prosecutor's attempt to find the witnesses, and the court gave the standard missing witness instruction.[5]

■ In these circumstances the trial court erred. It should not have given the instruction without first inquiring whether the government had been able to locate any or all of the four missing witnesses. Appellant had not only given their full names in his testimony the day before, but he had also provided exact addresses for three of the four.[6] This was sufficient to put the government on notice as to where at least those three could be found, thereby undermining its entitlement to a missing witness instruction. Without ascertaining that the government, armed with their names and addresses, was nevertheless unable to subpoena them, the court could not conclude that they were peculiarly available to the defense. *See Miles v. United States, supra,* 483 A.2d at 658 n. 9.

■ On the present record, however, we hold that the error in giving the instruction was harmless. The testimony of the missing witnesses was relevant only to the reason for appellant's possession of a large sum of money. It would not have accounted for the two packets of heroin—of significantly different degrees of purity—or the loaded gun. Considering the evidence as a whole, we are fully satisfied that the verdict would have been the same even if the

instruction had been omitted. *See Kotteakos v. United States,* 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1247–1248, 90 L.Ed. 1557 (1946). The judgment of conviction is therefore

*Affirmed.*

---

5. Criminal Jury Instructions for the District of Columbia, No. 2.41 (3d ed. 1978).

6. He had also testified that he knew the home and work telephone numbers of his employer, although he did not state those numbers on the record.